[No. S055368. Dec. 29, 1997.]

In re CINDY L., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
EDGAR L., Defendant and Appellant.

## COUNSEL

Stephanie M. Davis, under appointment by the Supreme Court, for Defendant and Appellant.

18

De Witt W. Clinton, County Counsel, Joe Ben Hudgens and Sterling Honea, Principal Deputy County Counsel, Scott Miller, Deputy County Counsel, and Gary P. Gross for Plaintiff and Respondent.

John J. Sansome, County Counsel (San Diego), Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—In *In re Carmen O.* (1994) 28 Cal.App.4th 908, 921 [33 Cal.Rptr.2d 848] (*Carmen O.*), the Court of Appeal created what it called a "child dependency hearsay exception" (sometimes the child dependency exception). This exception allows, under certain conditions, admission of out-of-court statements by alleged victims of child sexual abuse during a hearing to determine whether a child is a dependent of the juvenile court. (See Welf. & Inst. Code, § 300.)[1] In the present case we are called upon to determine whether the child dependency exception is applicable when the court decides that the child is not competent to testify because he or she is unable to understand the duty to tell the truth or does not possess the ability to distinguish between truth and falsity. (See Evid. Code, § 701, subd. (a)(2).) In order to answer this question, we must also address the preliminary question of whether the child dependency exception enunciated in *Carmen O.* is valid.

We conclude as to the latter question that the *Carmen O.* court's creation of a child dependency exception in sexual abuse cases was well founded, but that the exception should be more fully developed to provide specific due process protections for parents in child dependency hearings.

We further hold that a finding that a child is not competent to differentiate between truth and falsehood or to understand the duty to tell the truth at the time he or she is prepared to testify should not be an absolute bar to the admission of the child's hearsay testimony, but only one circumstance to be considered in determining whether the child's statement is reliable. We also conclude that the Court of Appeal in the present case was correct in upholding the juvenile court's admission of out-of-court statements of an alleged child sexual abuse victim during the dependency hearing.

---

[1] All statutory references are to this code unless otherwise stated.

## I. FACTUAL AND PROCEDURAL HISTORY

Cindy L. (Cindy) was born on October 15, 1990. Her father, Edgar L. (Edgar) and mother, Sonia M. (Sonia) separated in January 1994, and Cindy continued to live with Sonia.

Events in August of 1994 caused the Los Angeles County Department of Children and Family Services (Department) to initiate proceedings under section 300 to have Cindy adjudged a dependent child of the court.[2] When mediation failed, a four-day hearing was held in March of 1995. During that hearing, the following evidence was presented.

In August 1994, Cindy attended Thomas Preschool. Yolanda Herrera, a teacher's aide at the school, testified that on August 12, 1994, during nap time, she noticed Cindy lying on her back, with her legs spread open touching her vagina underneath the side of her underwear using both hands. Herrera asked in Spanish, Cindy's primary language, "Cindy, what are you doing? You shouldn't be touching yourself right there. You shouldn't do that." Cindy replied, "Well, my father always touches me right here . . . ."

Herrera reported this incident to the teacher, who directed Herrera to inform Sonia. That night, Sonia talked to Cindy, who denied any abuse. After a second incident at the preschool, the director referred the matter to the Department on August 16.

Mary Newman, a social worker, interviewed Cindy on that date at the preschool through an interpreter. When Newman asked Cindy, "Has anyone touched you in private places?," Cindy replied, "Yes, Poppie," and demonstrated by using her hand, touching her vagina, and pushing the material of her shorts into her vagina. Newman asked, "What did Poppie touch you with?," to which Cindy answered, "Fingers." When asked "How many fingers?," Cindy replied, "One." Cindy indicated to Newman that the touching took place at night in "daddy's bed." When asked to demonstrate her condition in bed by pointing to a dressed or undressed doll, Cindy pointed to the undressed doll. Cindy told Newman, "Daddy loves me best. I'm his favorite. Nobody loves me but daddy."

Newman reported the matter to the Los Angeles Police Department, whose investigator tried to interview Cindy at a police station with Sonia's

---

[2]As we explained in *In re Malinda S.* (1990) 51 Cal.3d 368, 373, footnote 4 [272 Cal.Rptr. 787, 795 P.2d 1244] (*Malinda S.*): "A proceeding to declare a minor a dependent child commences with a petition filed by a probation officer or the county welfare department. (§ 325.) Once the court determines that a minor falls within its jurisdiction under section 300, it may then limit the control exercised over the dependent child by any parent or guardian. (§ 361.)"

assistance on August 16. Cindy only pointed to her vagina and said "Papi." The police investigators could not determine where or when the alleged abuse occurred.

On the same date, Cindy was directed to Westside Hospital, where she was examined by Dr. Stephan Greene. According to a report by Dr. Greene, although he found no evidence of trauma, he did not "visualize" a hymen, and concluded that these findings were consistent with the reported history of sexual abuse.

Social worker Henry Olea interviewed Cindy on October 20. Olea asked Cindy if she knew the difference between a "good touch" and a "bad touch." Cindy replied by patting her vagina and saying, "Poppi." When asked where this activity happened, Cindy replied that it occurred in a bed. Thereafter, Cindy became nonresponsive to Olea's questions.

At the hearing, the Department twice tried unsuccessfully to obtain testimony from·Cindy. Cindy was generally nonresponsive to questions, and in response to questions regarding who, if any, "touched her pee-pee" she replied, "The clown." After the first attempt to obtain Cindy's testimony, Edgar contended that she was not competent to testify. With respect to the issue of competence, Newman testified that she could not specifically recall what she had done to determine whether Cindy understood the obligation to tell the truth, although she had a general routine for questioning children about their understanding of falsehoods, and she believed she had performed this routine with Cindy. Olea testified only that he had determined Cindy believed lies were bad.

At the conclusion of the hearing, the juvenile court found that Cindy was not competent as a witness because "[t]here is no way [the court could] make a finding based upon the behavior that [it] saw in [the] courtroom, that she understood the duty to tell the truth or she had the ability to distinguish between the truth and falsity." It concluded that Cindy was not competent when she had made her earlier statements to Newman and Olea. It also concluded that such statements, although generally competent evidence (see *Malinda S., supra*, 51 Cal.3d 368), were not "legally admissible" within the meaning of section 355 due to Cindy's incompetence, relying on the holding in *In re Daniel Z.* (1992) 10 Cal.App.4th 1009 [13 Cal.Rptr.2d 139] (*Daniel Z.*) that a child incompetent to testify due to an inability to distinguish between truth and falsity is presumed to be incompetent at the time the hearsay statement was made. It therefore disregarded the statements in question.

Nonetheless, the court concluded that Cindy's statements to Herrera were admissible under the child dependency exception to the hearsay rule announced in *Carmen O., supra*, 28 Cal.App.4th 908, because under that

exception no finding of competency is required. On the basis of this evidence, as well as Dr. Greene's medical report, and the testimony bearing on Edgar's opportunity to abuse Cindy, the court sustained the petition's allegations under section 300, subdivision (d), namely, that Edgar had sexually abused Cindy, and there was a substantial risk she would be sexually abused. Pursuant to section 360, it ordered family reunification services for Edgar, including sexual abuse counseling and visitation monitored by someone other than Sonia, followed by a six-month review.

The Court of Appeal affirmed, concluding that the juvenile court had not erred in applying the child dependency exception created by *Carmen O.*, despite the latter court's determination that Cindy was incompetent to testify. The Court of Appeal declared that "the child dependency . . . exception probes for unreflective and spontaneous truth-telling, and is not founded on the declarant's regard for the duty of truth-telling." We granted review.

## II. THE CHILD DEPENDENCY EXCEPTION

Before we consider whether the child dependency exception articulated in *Carmen O.*, *supra*, 28 Cal.App.4th 908, was properly applied in this case, we must first determine whether that exception was validly created. In order to do so, it is useful to review the special evidentiary rules for dependency hearings as construed by this court in *Malinda S.*, *supra*, 51 Cal.3d 368.

At the time this matter was adjudicated, section 355 provided that in a section 300 jurisdictional hearing, "any matter or information relevant and material to the circumstances or acts which are alleged to bring [the minor] within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300." (Stats. 1987, ch. 1485, § 34, p. 5621.) We concluded in *Malinda S.* that a "social study" prepared by a social worker pursuant to sections 281 and 358 fits within the class of "legally admissible" evidence on which a court can rely in a jurisdictional hearing, despite the fact that a social study is itself hearsay and may contain multiple levels of hearsay. Our conclusion was based in part on section 281, which provides that "[t]he court is authorized to receive and consider the [social study] reports and recommendations of the probation officer in determining any . . . matter" regarding the custody, status, or welfare of the minor. We found that the statute, together with California

Rules of Court, rule 1450(c)), authorizes a court to consider social studies in making its jurisdictional finding.[3]

In *Malinda S.* we assumed that those whose hearsay statements appear in a social study would be available for cross-examination. (*Malinda S., supra,* 51 Cal.3d at p. 384.) We did not consider whether such statements would be admissible and competent evidence if the testimony of the child making those statements was not available during the hearing. Since *Malinda S.,* however, several Court of Appeal decisions have held that a young child's extrajudicial statements contained in a social study are admissible when the child is not available as a witness because she is too intimidated to testify. (*In re Kailee B.* (1993) 18 Cal.App.4th 719, 725-726 [22 Cal.Rptr.2d 485]; *In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1043-1044 [17 Cal.Rptr.2d 643].) Other Courts of Appeal have concluded that when a child is disqualified to testify because she is unable to understand the duty to tell the truth, her hearsay statements, even when found in a social study, are considered presumptively unreliable and therefore not "legally admissible" within the meaning of section 355. (*In re Basilio T.* (1992) 4 Cal.App.4th 155 [5 Cal.Rptr.2d 450] (*Basilio T.*); *Daniel Z., supra,* 10 Cal.App.4th 1009.) These cases will be discussed at greater length in part III of this opinion.

Nothing in the Welfare and Institutions Code provides for a hearsay exception outside of what is contained in a social study. Nor is any such exception found in the Evidence Code.[4] Evidence Code section 1200 provides that hearsay evidence is inadmissible "[e]xcept as provided by law."

---

[3]Our holding in *Malinda S.* has been partially codified and partially modified by 1996 amendments to section 355. Section 355, subdivision (a), now provides that for purposes of a jurisdictional hearing, "[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within jurisdiction of the juvenile court is admissible and may be received in evidence." (Stats. 1996, ch. 36, § 1.) Subdivision (b) then provides that a social study and hearsay evidence contained in it are admissible and constitute competent evidence on which a finding of jurisdiction pursuant to section 300 may be based, to the extent allowed by section 355, subdivisions (c) and (d). Subdivision (c)(1) provides that "[i]f any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] . . . [¶] (B) The hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing. However, the hearsay statement of a minor under the age of 12 years shall not be admissible if the objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence." (§ 355, subd. (c)(1), added by Stats. 1996, ch. 36, § 1.)

[4]As shall be described at greater length below, Evidence Code section 1360 does provide an exception to the hearsay rule in the case of criminal prosecutions for certain forms of child abuse or neglect. Evidence Code section 1360 does not directly apply to noncriminal cases such as the present one.

Nonetheless, in *Carmen O.*, *supra*, 28 Cal.App.4th 908, the Court of Appeal created such a child dependency exception. The court reviewed the order of a juvenile court establishing jurisdiction over two minor children including Carmen O., age four. Admitted into evidence was the testimony of a 13-year-old half sister of Carmen who testified that Carmen had told her that " 'Papi me puso su pepino en mi panochita' (Daddy put his cucumber in my private part)" and similar statements. (*Id.* at p. 912.) Carmen's mother and grandmother testified that the half sister told them of Carmen's statements. Carmen was also interviewed by a social worker and a social study report was introduced into evidence. (*Ibid.*) Carmen herself was unable to testify at the dependency proceeding because, according to a psychologist who had examined her, she was afraid to testify in front of her father, did not speak English, and would not testify with an interpreter. One of the issues on appeal was whether the hearsay testimony of Carmen's half sister, mother, and grandmother, independent of the social study report, could be considered admissible evidence on which a juvenile court could rely in determining its jurisdiction over Carmen.

The *Carmen O.* court acknowledged that the hearsay statements in question did not fall within any recognized exceptions to the hearsay rule, such as a "spontaneous utterance" (see Evid. Code, § 1240, subd. (b)), "fresh complaint" (see *People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433]), or statement of a physical sensation (28 Cal.App.4th at p. 916). But as the court stated: "The factual background of the typical dependency case often reveals statements of child victims which seem under the circumstances to be reliable, and which juvenile court judges should be entitled to consider for the substance and truth of the statement. Reproduction of these statements from the mouths of victims very often, however, becomes impossible . . . . A child will be afraid publicly to accuse his or her father; the child may be cowed by the formal settings of the court; he or she may be intimidated by adverse counsel and cross-examination. Hence we often have an occasion to seek means of admission of obvious hearsay statements, and we appear to achieve our objective by straining traditional hearsay concepts." (*Id.* at p. 917, fn. omitted.)

Rather than "straining traditional hearsay concepts," the *Carmen O.* court found it appropriate to create a new hearsay exception. Citing our own decision in *Malinda S.*, *supra*, 51 Cal.3d at page 376, the *Carmen O.* court affirmed that " 'exceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in other codes and decisional law,' " and concluded that the child dependency exception is one that could be validly created by an appellate court. (28 Cal.App.4th at pp. 918, 921.)

In addition to finding both the need and the capacity to create a child dependency exception, the court found authority for such an exception in the statutes of other states (see, e.g., Wash. Rev. Code Ann. § 9A.44.120 (1994)) and in an American Bar Association report. (See American Bar Association's National Legal Resource Center for Child Advocacy and Protection, Recommendations for Improving Legal Intervention in Intrafamily Child Sexual Abuse Cases (hereafter American Bar Association Recommendations).) (*Carmen O., supra*, 28 Cal.App.4th at p. 917.) It also found such an exception prefigured in California case law. (See *In re Kailee B., supra*, 18 Cal.App.4th 719, 725; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1125-1126 [200 Cal.Rptr. 789].) It concluded: "This court believes the time has now come . . . for a recognition of what we will call a 'child dependency hearsay exception.' " (*Carmen O., supra*, 28 Cal.App.4th at p. 921.)

The *Carmen O.* court was not explicit as to the precise form that such an exception would take. It appeared generally to follow the American Bar Association Recommendations and the Washington statute on child hearsay, and similar statutes,[5] at least inasmuch as it concluded that child hearsay statements recounting sexual abuse may be admitted when " '. . . the time, content, and circumstances of the statement provide sufficient indicia of reliability,' " and the child either testifies at trial or is unavailable as a witness. (*Carmen O., supra*, 28 Cal.App.4th at p. 917.)

Turning to its own case, the court concluded that the child dependency exception was properly applied: First, the *Carmen O.* court implicitly found Carmen unavailable to testify because of her incapacity. Next, it found the circumstances under which Carmen made her statement to her half sister to be reliable. "The child here was of a very young age such that it is unlikely that the accusation was fabricated or the product of imagination. The statement accusing [the] father of molestation was spontaneous rather than the result of suggestive or leading questioning. Independent evidence was consistent with the statement. The statement was made not once but several times, and various recitations were consistent. The wording of the statement both in its Spanish terminology and its use of infantile descriptive words indicate no coaching . . . . Other adult males lived in the same household, but no accusation was made against them, which indicates a lack of indiscriminate or random accusations. Finally, there appeared no motive for Carmen to lie or exaggerate in her statements: The evidence was that she loved her father, played with him, and, apparently, did not become disaffected from him because of his sexual acts with her." (*Carmen O., supra*, 28 Cal.App.4th at p. 921.)

---

[5]Over 34 jurisdictions have some form of an hearsay exception. (See Note, *Should We Believe the People Who Believe the Children?: The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute* (Winter 1995) 32 Harv. J. on Legis. 207, 237 (hereafter Note).)

■ We conclude that *Carmen O.*'s holding is basically sound. In deciding this question, we must first determine whether *Carmen O.* was correct in concluding that appellate courts do in fact have the power to create new exceptions to the hearsay rule not found in the Evidence Code. Although neither party disputes the court's authority to create such exceptions, that authority has been little used (see Scott, *California's Dormant Hearsay Exception: Section 1200 (b) of the Evidence Code* (1983) 23 Santa Clara L.Rev. 157 (hereafter *California's Dormant Hearsay Exception*)) and so requires some discussion.

Prior to the adoption of the Evidence Code in 1965, it is undisputed that courts on occasion created new exceptions to the hearsay rule. (See *People* v. *Spriggs* (1964) 60 Cal.2d 868, 873 [36 Cal.Rptr. 841, 389 P.2d 377], and cases cited therein.) A quintessential example of the exercise of that power is to be found in *Spriggs*, in which the court found that hearsay statements against penal interest were admissible, contrary to previous case law. Under the then existing statutory regime, Code of Civil Procedure section 1845 provided that " 'A witness can testify of those facts only which he knows of his own knowledge . . . except in those few express cases in which . . . the declarations of others, are admissible.' " (As quoted in *Spriggs, supra,* 60 Cal.2d at p. 872.) Common law exceptions to the rule against hearsay recognized in 1872, when the Code of Civil Procedure was drafted, were incorporated into various sections of the code. (*Id.* at pp. 872-873.) Justice Traynor explained in *Spriggs* that the codification of common law was not intended to bar the judicial creation of new hearsay exceptions. "Numerous questions arise on which the Legislature has been silent or inexplicit. The courts must answer these questions and develop judicially the law of evidence [citations] in the light of common law principles and the basic objectives of the statutes." (*Id.* at p. 872.)

In 1965, after *Spriggs* was decided, the statutory law of evidence was revised and expanded, and transferred from the Code of Civil Procedure into the newly created Evidence Code. These revisions, however, did not eliminate the role of courts in the development of new hearsay exceptions as appropriate. As one commentator has pointed out, the California Law Revision Commission initially recommended adopting the Uniform Rules of Evidence, which would have limited hearsay exceptions to those found in statute. (*California's Dormant Hearsay Exception, supra,* 23 Santa Clara L.Rev. at p. 158; Tent. Recommendation and Study Relating to the Uniform Rules of Evidence (Aug. 1962) 4 Cal. Law Revision Com. Rep. (1963) pp. 311, 339.) Eventually, however, the commission reversed itself, and its final recommendation favored a greater role for courts and decisional law in shaping the law of evidence. As the commission explained in the introduction to its recommendations, although the proposed Evidence Code was

more comprehensive than the then current one, the former code "will not, however, stifle all court development of the law of evidence. In some instances—the *Privileges* division, for example—the code to a considerable extent precludes further development of the law except by legislation. But, in other instances, the Evidence Code is deliberately framed to permit the courts to work out particular problems or to extend declared principles into new areas of the law. As a general rule, the code permits the courts to work toward greater *admissibility* of evidence but does not permit the courts to develop additional *exclusionary* rules." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) pp. 1, 34, original italics.)

It is clear for a number of reasons that the commission, and the Legislature that adopted the commission's recommendations, had the hearsay rule and exceptions thereto in mind when they referred to the permission granted to courts to "work out particular problems or . . . extend declared principles into new areas of law." Evidence Code section 1200, subdivision (b) states: "Except as provided by law, hearsay evidence is inadmissible." Evidence Code section 160 in turn defines "law" to include "constitutional, statutory, and decisional law." The commission comment on section 160 states: "This definition makes clear that a reference to 'law' includes the law established by judicial decisions as well as by constitutional and statutory provisions." (Recommendation Proposing an Evidence Code, *supra*, 7 Cal. Law Revision Com. Rep. at p. 44.) Thus, the language of Evidence Code section 1200, read in light of Evidence Code section 160 and the comments thereon, makes clear that one source of exceptions to the hearsay rule is from judicial decisions.

The commission's comment to Evidence Code section 1200, which was adopted by the Senate Committee on the Judiciary, further underscores the active role contemplated for the judiciary in developing new hearsay exceptions. As the Senate Committee's comment states in pertinent part: "Section 1200 states the hearsay rule. It defines hearsay evidence and provides that such evidence is inadmissible unless it meets the conditions of an exception established by law. Chapter 2 (commencing with Section 1220) of this division contains a series of exceptions to the hearsay rule. Other exceptions may be found in other statutes or *in decisional law*. . . . [¶] . . . [¶] [The] exceptions to the hearsay rule may be found either in statutes or in decisional law. Under existing law, too, the courts have recognized exceptions to the exclusionary rule in addition to those exceptions expressed in the statutes." (Sen. Com. on Judiciary, com. on Assem. Bill No. 3212 (1965 Reg. Sess.) reprinted at 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1200, pp. 3-4, italics added.) Lest there be any doubt about the meaning of the phrase

"decisional law" or the proper role of the courts in creating exceptions to the hearsay rule, the comment then cites to *Spriggs*, which, as discussed immediately above, endorsed and exemplified the principle that courts may develop new common law exceptions to the hearsay rule.

The power of the judiciary in developing new hearsay exceptions has been little used. As one commentator has pointed out, courts have made limited forays into creating hearsay exceptions, generally without explicitly acknowledging the source of its power under Evidence Code section 1200. (See *California's Dormant Hearsay Exception*, *supra*, 23 Santa Clara L.Rev. at pp. 165-178 [discussing the development of the "fresh complaint" doctrine and the rule permitting the admission of invoices].) In *Malinda S.*, *supra*, 51 Cal.3d at page 376, we recognized "that exceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in other codes and decisional law." But the fact that the judicial authority to create new hearsay exceptions has rarely been exercised does not thereby render it forfeit.

We emphasize that our reaffirmation of the power of courts to develop new hearsay exceptions does *not* turn on any constitutional principle of separation of powers. The Legislature, when it adopted the Evidence Code incorporating many rules originating at common law, chose to allow courts to continue to perform their common law function in a manner consistent with statute. Although not explicit in its justification, we can suppose that the Legislature determined that courts, by virtue of their position in administrating the rules of evidence on a day-to-day basis, would be in a good position to further develop the law of hearsay to respond to new evidentiary problems. The Legislature could have chosen to make hearsay law the exclusive province of statute, as it has done for the most part in the area of evidentiary privileges. (Evid. Code, § 911; *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496].) It has chosen not to do so.

We also emphasize that in developing new exceptions to the hearsay rule, courts must proceed with caution. The general rule that hearsay evidence is inadmissible because it is inherently unreliable is of venerable common law pedigree. (See *Englebretson* v. *Industrial etc. Com.* (1915) 170 Cal. 793, 798 [151 P. 421].) The rule also has a recognized constitutional dimension, at least in the criminal context, because it is related to the confrontation clause of the Sixth Amendment to the United States Constitution. (See *Idaho* v. *Wright* (1990) 497 U.S. 805, 813-814 [110 S.Ct. 3139, 3145-3146, 111 L.Ed.2d 638].) Furthermore California, unlike federal courts and some state jurisdictions, does not have a "residual hearsay" exception that permits any

hearsay statement into evidence as long as it bears sufficient indicia of reliability. Caution on the part of the judiciary is also warranted because hearsay is an area of law that is now governed by an extensive statutory scheme. (See Evid. Code, §§ 1200-1370.) Courts may not create evidentiary exceptions in conflict with statute. (See *People* v. *Wheeler* (1992) 4 Cal.4th 284, 299-300 [14 Cal.Rptr.2d 418, 841 P.2d 938].)

Despite this cautionary note, it may nonetheless be appropriate for courts to create hearsay exceptions for classes of evidence for which there is a substantial need, and which possess an intrinsic reliability that enable them to surmount constitutional and other objections that generally apply to hearsay evidence. (See *California's Dormant Hearsay Exception, supra*, 23 Santa Clara L.Rev. at pp. 159-162.) ▮ In the present case, there is a substantial need for the class of hearsay evidence contained in the child dependency exception. As the *Carmen O.* court and the sources on which it relied recognize, there are particular difficulties with proving child sexual abuse: the frequent lack of physical evidence, the limited verbal and cognitive abilities of child victims, the fact that children are often unable or unwilling to act as witnesses because of the intimidation of the courtroom setting and the reluctance to testify against their parents. (See 1 Myers, Evidence in Child Sex Abuse and Neglect Cases (2d ed. 1992) § 4.1, pp. 218-219.) Given these realities, the categorical exclusion of child hearsay, or admission only if the hearsay fits within traditional yet narrow categories such as the "spontaneous utterance" exception, will often mean the exclusion of significant, reliable evidence required for the juvenile court to assert its jurisdiction over the child and to ultimately protect him or her from an abusive family relationship.[6]

Even if hearsay evidence is necessary, however, an exception to the hearsay rule is not valid unless the class of hearsay evidence proposed for admission is inherently reliable. We believe the exception created by the *Carmen O.* court needs to be clarified and augmented in order to better safeguard the reliability of a child's hearsay statements introduced in a dependency proceeding. The *Carmen O.* court looked for guidance to the

---

[6]As noted in footnote 3, *ante*, the Legislature has amended section 355 to broadly authorize reliance on any hearsay contained in the social study by a child victim under the age of 12, as long as an objecting party does not prove that the statement was procured by means of fraud, deceit, or undue influence. Because the present case occurred before the 1996 amendments to section 355 went into effect, we need not decide whether the amended section 355 obviates the need for the child dependency exception. The precise meaning of section 355, and whether it permits a social service agency to produce via a social study report all the evidence that would be produced through the child dependency exception is a question left for another day. For our present purpose, it is sufficient to affirm that when this case was decided, the child dependency exception created in *Carmen O.* filled a significant gap in the law of hearsay evidence in child dependency proceedings that justified the creation of the exception.

American Bar Association Recommendations and the Washington statute, which represent the predominant approach to a child hearsay exception, yet did not discuss or formally adopt the safeguards contained therein. The California Legislature in 1995 enacted a statute based on the Washington model directed at certain types of offenses of child abuse and neglect. (Evid. Code, § 1360.)[7] The Washington statute, the California statute, and the American Bar Association Recommendations all have the following requirements in common for admission of out-of-court statements: (1) the court must find that the time, content and circumstances of the statement provide sufficient indicia of reliability; (2) a child must either be available for cross-examination or there must be evidence of child sexual abuse that corroborates the statement made by the child; and (3) other interested parties must have adequate notice of the public agency's intention to introduce the hearsay statement so as to contest it. (Evid. Code, § 1360; Wash. Rev. Code Ann. § 9A.44.120 (1994); see also American Bar Association Recommendations, *supra*, at p. 34.) For the reasons stated below, we adopt these requirements as applicable to admission of child hearsay statements in dependency hearings in which sexual abuse is alleged.

Of these three safeguards, the reason for the third, that of notice, is readily apparent. (See *Malinda S.*, *supra*, 51 Cal.3d at pp. 382-383 [due process in dependency hearings requires advance notice and opportunity to rebut adverse testimony].) The first requirement, that of circumstantial indicia of reliability, is common to all statutes that have adopted child hearsay exceptions. The nonexhaustive list of factors that the United States Supreme Court has cited as relevant to the reliability of hearsay statements made by child

---

[7]Evidence Code section 1360 reads:

"(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child either:

"(A) Testifies at the proceedings.

"(B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.

"(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

"(c) For purposes of this section, 'child abuse' means an act proscribed by Section 273a, 273d, or 288.5 of the Penal Code, or any of the acts described in Section 11165.1 of the Penal Code, and 'child neglect' means any of the acts described in Section 11165.2 of the Penal Code."

witnesses in sexual abuse cases are (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate. (*Idaho* v. *Wright*, *supra*, 497 U.S. at pp. 821-822 [110 S.Ct. at p. 3150].) As explained at greater length below, the child's ability to understand the duty to tell the truth and to distinguish between truth and falsity is also a factor in determining the reliability of his or her extrajudicial statements.

The second requirement, that of corroboration of evidence if the hearsay declarant is unavailable for cross-examination, is consistent with the predominant view regarding the admissibility of child hearsay statements. (See Note, *supra*, 32 Harv. J. on Legis. at pp. 238-239.) As one author has observed, the various indicia of reliability of a child's out-of-court statements are by their very nature sufficiently ambiguous as to be "easily manipulable." (*Id.* at p. 242.) A requirement of corroboration is an additional safeguard against the possibility of fabrication by very young witnesses whose out-of-court statements are insulated from the rigors of cross-examination. Furthermore, the requirement of corroboration will make the rule in this state regarding the admission of child hearsay statements consistent in both criminal and dependency proceedings. (See Evid. Code, § 1360.)

Of course, it may be argued that hearsay evidence should be more readily admissible in a child dependency proceeding than in a criminal proceeding, because the rights and interests at stake are different: dependency proceedings, unlike criminal proceedings, do not result in criminal sanctions, and exist primarily to promote the best interests of the child. (See *Malinda S.*, *supra*, 51 Cal.3d at pp. 384-385.) But this difference is already reflected in statutes. First, there are differing burdens of proof in criminal and dependency proceedings—the former by beyond a reasonable doubt, the latter by the preponderance of the evidence with respect to a decision to assert jurisdiction, and by clear and convincing evidence if the child is to be removed from parental custody (see §§ 355, 361). Second, the Legislature has also already provided by statute, as discussed, for greater admissibility of child hearsay statements that are included in social studies. (See § 355.) Thus, existing statutes provide government agencies with considerable opportunity to introduce hearsay evidence in order to protect the interests of a child in an abusive situation. The child dependency exception we recognize today provides for certain minimal safeguards in those instances in which the evidence sought to be introduced does not fit within any statutory exception to the rule against hearsay.

Having determined that the *Carmen O.* court was correct, essentially, in creating a child dependency exception to the hearsay rule, we now turn to

the question whether a finding that a child is incompetent to testify because he or she is unable to differentiate between truth and falsehood or to understand the duty to tell the truth should be a bar to the admission of that child's out-of-court statements.

### III. COMPETENCE AND THE CHILD DEPENDENCY EXCEPTION

■ Edgar claims that even if we recognize a child dependency exception, that exception is inapplicable to this case, because Cindy was incompetent at the time she made the hearsay statement in question. As will be recalled, the juvenile court found that Cindy was not competent as a witness because "there is no way [the court could] make a finding based upon the behavior that [it] saw in [the] courtroom, that she understood the duty to tell the truth or she had the ability to distinguish between the truth and falsity." Edgar concedes, as is well established by case law, that if a child is unavailable to testify because she is too intimidated by the courtroom setting—what he designates as "fear incompetent"—then the hearsay statements of such a child could be admitted into evidence if they fell into one of the hearsay exceptions. (See *In re Kailee B., supra*, 18 Cal.App.4th 719, 725-726; *In re Dirk S., supra*, 14 Cal.App.4th 1037, 1043-1044.)[8] That was apparently the reason for the finding of incompetence in *Carmen O.* (See *Carmen O., supra*, 28 Cal.App.4th at pp. 911-912.) But Edgar claims that if a child is found to be incompetent because of the failure to understand the duty to tell the truth or to distinguish between truth and falsity—which he terms "truth incompetent"—then it must be presumed that she was incompetent at the time the hearsay statement was made; accordingly, her statement should not be admitted absent proof rebutting this presumption of incompetence. (See *Basilio T., supra*, 4 Cal.App.4th at p. 167; *Daniel Z., supra*, 10 Cal.App.4th at p. 1019.) Because no such rebuttal was offered in the present case, and because without Cindy's hearsay statement a finding that she was a person described in section 300 was without sufficient basis, Edgar argues that the judgment of the juvenile court should be reversed.

In support of his position, Edgar relies primarily on *Basilio T., supra*, 4 Cal.App.4th 155. That case considered the admission of hearsay statements in a social study following our holding in *Malinda S., supra*, 51 Cal.3d 368. One of the hearsay declarants, a child in an allegedly violent and physically abusive household, was found not competent to testify at trial " 'due to his

---

[8]There are also cases, as Edgar acknowledges, in which the out-of-court statements of the child are used not to prove the truth of the matter asserted, but to prove the state of mind of the child or the nonabusing parent. (See *In re Clara B.* (1993) 20 Cal.App.4th 988, 999, fn. 5 [25 Cal.Rptr.2d 56]; *In re Dorinda A.* (1992) 10 Cal.App.4th 1657, 1662-1663 [13 Cal.Rptr.2d 653].) Those types of statements are not at issue in the present case.

inability to distinguish between the truth and a lie.' " (4 Cal.App.4th at p. 161.) The Court of Appeal addressed the issue of whether this finding of truth incompetence affected the admissibility of the child's hearsay statements contained in the social study regarding his witnessing violent confrontations between his parents. The juvenile court had admitted the statements and had, after a dispositional hearing, ordered the child removed from the physical custody of his parents, but the Court of Appeal reversed and remanded.

As the *Basilio T.* court explained, every person regardless of age is competent to testify (Evid. Code, § 700) except if he or she is "[i]ncapable of expressing himself or herself concerning the matter so as to be understood . . . ; or [¶] [i]ncapable of understanding the duty of a witness to tell the truth." (*Id.*, § 701.) Admitting that authority on the matter was scarce, the *Basilio T.* court found that, as a general rule, "a hearsay declarant must be competent when an out-of-court statement is made" (4 Cal.App.4th at p. 167) in order to have the statement admitted under one of the exceptions to the hearsay rule. The court declared, quoting 5 Wigmore, Evidence (Chadbourne rev. 1974) section 1424, at page 255: " 'The hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed *the qualifications of a witness* . . . in regard to knowledge and the like. These qualifications are fundamental as rules of relevancy. Thus these extrajudicial statements may be inadmissible because of their failure to fulfill the ordinary rules about qualifications, even though they meet the requirements of a hearsay exception.' " (4 Cal.App.4th at p. 166, italics added by *Basilio T.*) The court then reasoned that the effect of finding a child incompetent to tell the truth at the time of trial raised a presumption that the child was incompetent at the time the hearsay statement was uttered; those seeking to rebut this presumption had the burden of producing contrary evidence. (*Basilio T.*, *supra*, 4 Cal.App.4th at p. 167; see also *Daniel Z.*, *supra*, 10 Cal.App.4th at pp. 1019-1020 [applying this rule to a case of sexual abuse].) As the *Basilio T.* court explained: "Absent a showing otherwise, the young child who is unable to differentiate between truth and falsehood at trial would not have possessed that qualification at an earlier point in time." (*Basilio T.*, *supra*, 4 Cal.App.4th at p. 167.) The *Basilio T.* court recognized that the rule presumptively barring hearsay statements by persons incompetent to testify at trial has exceptions, such as when the statement is an "excited utterance." (See *People* v. *Butler* (1967) 249 Cal.App.2d 799, 807 [57 Cal.Rptr. 798]; *People* v. *Orduno* (1978) 80 Cal.App.3d 738, 745 [145 Cal.Rptr. 806].) But the statements considered in *Basilio T.* did not fall within such an exception.

*Basilio T.*, however, is not dispositive of the case before us. At issue there was the admission of a child hearsay statement under the broad "social

study" exception recognized in *Malinda S.* Although we concluded in *Malinda S.* that the "elements of objectivity and expertise lend [social studies] a degree of reliability and trustworthiness" (*Malinda S., supra,* 51 Cal.3d at p. 377), such that the social studies will generally contain accurate reports of interviews with children, the statements of the children themselves found therein do not necessarily possess any particular guaranties of reliability. *Basilio T.* thus would not permit judicial reliance on such statements when they come from children unavailable for cross-examination and seemingly incompetent to tell the truth. Assuming for the present that *Basilio T.* is correctly decided, the question with which we are confronted in this case is whether *Basilio T.*'s logic applies to the narrower child dependency exception that we affirm today. As explained, this exception, unlike the social study exception contested in *Basilio T., does* require that a child's statement be found to be particularly trustworthy. Therefore, the question we must address is whether the relationship between truth competency and admissibility articulated in *Basilio T.* in the context of the social study exception applies to the child dependency exception.

Those out-of-state authorities that have considered this question in the context of their own child hearsay exception statutes have concluded that a finding of testimonial incompetence is not a bar to admission of a hearsay statement. In *Perez* v. *State* (Fla. 1988) 536 So.2d 206, 210-211, the Florida Supreme Court stated, regarding a child hearsay exception very similar to that we propose here: "We reject the argument that the child must be found to be competent to testify before the child's out-of-court statements may be found to bear sufficient safeguards of reliability. [Our statute] provides that '[a] person is disqualified as a witness when the court determines that he is . . . [i]ncapable of understanding the duty of a witness to tell the truth.' A young child generally does not understand abstract concepts such as duty, truth, or lie. The fact that a child is incompetent to testify at trial . . . does not necessarily mean that the child is unable to state the truth. The requirement that the trial court find that the time, content, and circumstances of the statement provide sufficient safeguards of reliability furnishes a sufficient guarantee of trustworthiness of the hearsay statement, obviating the necessity that the child understand the duty of a witness to tell the truth."

Though *Perez* involved a child who was unavailable to testify because of a finding of substantial likelihood that severe emotional and mental harm would result (*Perez* v. *State, supra,* 536 So.2d at p. 210), the Florida Supreme Court applied the above stated principle to admit the statements of a child found incompetent due to a "lack of understanding as to the duty or obligation to tell the truth." (*State* v. *Townsend* (Fla. 1994) 635 So.2d 949, 952, 955.) The *Townsend* court underscored that what was significant in

determining the admissibility of a statement under the child hearsay exception was "not the competency of the witness" but "the particularized guarantees of trustworthiness that ensure the reliability of a statement." (*Ibid.*)

The Washington Supreme Court reached the same conclusion in *State* v: *Doe* (1986) 105 Wn.2d 889 [719 P.2d 554]. As the court stated: "Reliability does not depend on whether the child is competent to take the witness stand, but whether the comments and circumstances surrounding the statement indicate it is reliable. . . . [¶] . . . The child's lack of competency may be a factor, but it is not controlling." (*Id.* at pp. 557-558.) Although the basis for the finding of incompetency in *Doe* is unclear (*id.* at p. 555), the Washington Court of Appeal has applied the logic of *Doe* to circumstances in which a child was disqualified to testify in part because of an inability "to understand the nature of the oath." (*State* v. *Hunt* (1987) 48 Wn.App. 840 [741 P.2d 566, 570]; *id.* at pp. 567, 569.)

We agree with the Washington and Florida courts that a finding of incompetence to testify should not be a categorical bar to the admission of a child's out-of-court statements. As our Court of Appeal concluded in *People* v. *Butler, supra,* 249 Cal.App.2d at page 807, "The spontaneity of the declarations lend[s] credibility to the exclamations of a hearsay declarant who might be otherwise incompetent, due to minority or other valid reasons, to testify at trial." (See also *People* v. *Orduno, supra,* 80 Cal.App.3d at p. 745.) So, too, in the case of the child hearsay exception we recognize today, the fact of the child's incompetence to testify does not prevent a court from finding that the various circumstances surrounding the statement—not only its spontaneity, but also the precociousness of the child's knowledge of sexual matters, the lack of motive to lie, and other factors outlined above—lead to the conclusion that the statement bears special indicia of reliability and is therefore admissible. The requirement of either corroboration or availability for cross-examination additionally safeguards against the possibility that the child is merely fabricating the statement.

We recognize, as Wigmore stated, "on the one hand the childish disposition to weave romances and to treat imagination for verity, and on the other hand the rooted ingenuousness of children in their tendency to speak straightforwardly what is in their minds." (2 Wigmore, Evidence (Chadbourn ed. 1979) § 509, p. 719.) We also note that contemporary psychological research affirms a young child's capacity to tell the truth. (See, e.g., Melton et al., Psychological Evaluations for the Courts (2d ed. 1997) § 7.07, p. 173 [reporting little relationship between age and honesty, although conceptualization of duty to tell the truth varies with age].) There is no logical reason for denying admission of out-of-court statements that circumstances indicate

originate from a child's "rooted ingenuousness" merely because he or she appears unable to understand, in the abstract, the duty to tell the truth. Thus, although we agree with the Washington Supreme Court that a child's truth competence is a factor in determining the reliability of a hearsay statement, it is not necessarily the decisive factor.

Applying the child dependency exception to the present case, we first note that we will not overturn the juvenile court's conclusion that hearsay evidence was admissible unless the court has abused its discretion. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1250-1251 [270 Cal.Rptr. 451, 792 P.2d 251].) We conclude that the juvenile court did not abuse its discretion when it found Cindy's statement to Yolanda Herrera admissible and competent evidence in making its jurisdictional determination. First, the time, content, and circumstances of the statement provide particular indicia of reliability. As the court observed, Cindy's statement was a spontaneous response to Herrera's comment, "Cindy, what are you doing? You shouldn't be touching yourself right there. You shouldn't do that." Cindy replied, "Well, my father always touches me right here . . . ." Although Edgar argues that Cindy may have made her statement in order to avoid what she perceived as blame coming from Herrera, we note that there was no prompting on Herrera's part to suggest that another adult, let alone Edgar, was blameworthy. Moreover, Cindy repeated the statement consistently to two social workers and to the Los Angeles Police Department investigator. We also find it significant that although Edgar had an opportunity to cross-examine the adults reporting Cindy's statement, no motive to lie was revealed either on Cindy's part or on the part of those adults. Indeed, the evidence is that Cindy loved her father and had no wish to harm him.

Second, Cindy, owing to her incompetence, was unavailable for cross-examination. (See *State* v. *Doe*, *supra*, 719 P.2d at p. 557 ["The term 'available' denotes a witness who can be confronted and cross-examined. [Citation.] A child unable to take the stand obviously cannot respond to opposing counsel's questions."].) Therefore under the child dependency exception we have articulated today, the child's statements must be corroborated. Corroborative evidence in this context is " ' "evidence . . . which would support a logical and reasonable inference" ' " that the act of abuse described in the hearsay statement occurred." (*State* v. *Swan* (1990) 114 Wn.2d 613 [790 P.2d 610, 615], fn. omitted.) Here the report of Dr. Stephan Greene that he could not "visualize a hymen," a fact consistent with a history of sexual abuse, provides such corroboration. The juvenile court specifically found such evidence persuasive, and we conclude it did not abuse its discretion in doing so.

Finally, Edgar appears to have been aware that Cindy's statement, which was the primary basis for initiating the Department's action to assert jurisdiction over her, would be introduced during the jurisdictional hearing. He does not claim surprise, nor is there any indication of such.

In sum, the juvenile court did not abuse its discretion by admitting or relying on Cindy's statement in making its jurisdictional determination. Given that, there was sufficient evidence to support that determination.

## IV. DISPOSITION

For all of the foregoing, the judgment of the Court of Appeal in this case is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**BROWN, J.,** Dissenting.—I am troubled by the prospect of this court trying to craft a child dependency hearsay exception. The development of hearsay exceptions at common law over the last three centuries has been a gradual process. "Hearsay is generally excluded because the out-of-court declarant is not under oath and cannot be cross-examined to test perception, memory, clarity of expression, and veracity, and because the . . . trier of fact . . . is unable to observe the declarant's demeanor. [Citations.] . . . [T]he focus of the rule's several exceptions is . . . on the reliability of the out-of-court declaration. Thus, the various hearsay exceptions generally reflect situations in which circumstances affording some assurance of trustworthiness compensate for the absence of the oath, cross-examination, and jury observation." (*People* v. *Cudjo* (1993) 6 Cal.4th 585, 608 [25 Cal.Rptr.2d 390, 863 P.2d 635].)

Here we are dealing with a three-year-old child. The trial court determined she is unable to distinguish between truth and falsity. The role played by reality, imagination, and suggestion in such a child's recollection of events is profoundly mysterious. The majority's desire to allow courts broad latitude to consider highly relevant evidence in cases involving suspected sexual abuse of young children is understandable. However, opening up this field to ad hoc judicial legislation is likely to embroil courts at all levels in a far-ranging quest for indicia of reliability which neither experience nor empiricism can readily support. (See Note, *Determining Reliability Factors in Child Hearsay Statements: Wright and Its Progeny Confront the Psychological Research* (1994) 79 Iowa L.Rev. 1149, 1176-1177 ["psychological research has verified less than half of the reliability factors relied on by the

courts in determining the truthfulness of child hearsay statements" (fn. omitted)].) Thus, even assuming we have the authority to create a child dependency hearsay exception, it is not at all clear we have the resources to obtain the psychological expertise necessary to determine the reliability of a child's statement. Rather, the Legislature appears to be in a better position to research and delineate the appropriate criteria for any such hearsay exception.

Moreover, as the majority acknowledges, the Legislature has been active in this area. In 1995, it enacted Evidence Code section 1360, which allows for admission of certain child hearsay statements in a child abuse or neglect prosecution. (Maj. opn., *ante*, at p. 29, fn. 7.) In 1996, after the decision in *In re Carmen O.* (1994) 28 Cal.App.4th 908, 921 [33 Cal.Rptr.2d 848], which first recognized a child dependency hearsay exception, it amended Welfare and Institutions Code section 355 to allow consideration under certain circumstances of a child's out-of-court statements contained in a social study. (Maj. opn., *ante*, at pp. 22, fn. 3, 28, fn. 6 & pp. 30-31.) We should restrain from exercising any authority we may have to create common law exceptions to the hearsay rule when the Legislature has been active in formulating closely related exceptions. (See *People* v. *Wheeler* (1992) 4 Cal.4th 284, 299-300 [14 Cal.Rptr.2d 418, 841 P.2d 938] [refusing to fashion a judicial hearsay exception to allow impeachment with misdemeanor convictions when the Legislature created a hearsay exception for felony convictions only].)