Filed 7/16/14  In re K.D. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY CHILDREN AND FAMILY SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.W. et al.,<br><br>    Defendants and Appellants. | A138122<br><br>(San Mateo County<br>Super. Ct. No. 72958, 82276, 82277) |

The mother of three minors (two girls and one boy ages 1, 3, and 11 at the time this proceeding was commenced), and the presumed father of two of the minors, appeal from the dispositional order of the juvenile court declaring the minors to be dependant children and placing them with a foster parent approved by respondent San Mateo County Children and Family Services Agency (Agency).

The court sustained the following allegations of the amended petition filed by the Agency on December 14, 2012:

"The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness . . . .  [¶] as a result of the failure or inability of his or her parent . . . to supervise or protect the child adequately. . . .  [¶] On November 6, 2012, while the Agency was investigating an unexplained injury to [the younger daughter, she]

1

stated that the father . . . pulls her arm and she is being 'whooped' with a belt on the buttocks by her parents. [The daughter] further reported that the father hits [the daughter's brother], age twenty-three months, with a green plastic bat, and that the mother 'whoops' their half-sibling . . . . On November 12, 2012, the Agency filed WIC 300 (b) petitions regarding the children, and at the initial Hearing on November 14, 2012, the court ordered the parents to cooperate with unannounced visits to the family's home and the children's schools. However, since that time, the Agency has made numerous efforts to visit the family and verify the children's safety, and the parents have remained uncooperative. On December 6, 2012, the Agency learned that the family has moved out of their residence; the parents have refused to provide the Agency with their current address. Further, although the court issued Protective Custody Warrants regarding all three children on December 11, 2012, . . . [two of the minors] were taken into protective custody on December 12, 2012 [and] the parents have refused to discuss the whereabouts of [the third child]. The parents' history of violent and abusive behavior, ongoing uncooperativeness with the Agency, and disregard for the court's orders place [the children] at risk of harm in the care of the parents.

"The family has an extensive history of involvement with Child Protective Services and the Juvenile Court in San Mateo and San Francisco Counties, in that:

"On or about June 7, 2004, the mother hit [the older daughter] . . . with a belt, resulting in deep bruises to the child's buttocks, lower back, and both legs. A WIC 300 (a) petition was filed, and on September 15, 2004, the petition was sustained and [the child] was declared a Dependent of the San Mateo County Juvenile Court in out-of-home placement. Family Reunification services were provided to the mother and [the daughter's] father [not the appellant here], and on March 15, 2005, [the daughter] was returned to the mother's care. Family Maintenance services were provided until September, 15, 2005, when [the daughter's] Dependency status was terminated.

"On or about November 20, 2008, [the older daughter] . . . was removed from the mother's care and detained in the protective custody by San Francisco County Children & Family Services, following [the daughter's] disclosure that her mother routinely

2

disciplined her by hitting her with a belt, a spatula, and her hands. Further, the mother refused to cooperate with the Agency in that she would not allow the social worker to meet with her or the children. As a result, WIC 300 (a), (b), (c), (g), and (j) petitions were filed regarding [the daughters] . . . . On February 9, 2009, the petition regarding [the older daughter] was sustained, she was declared a Dependent of San Francisco Juvenile Court and she was ordered to be returned to the mother's care, with Family Maintenance services in place; the petition regarding [the younger daughter] who had not been removed from the mother's care, was dismissed. Family maintenance services were provided until August 12, 2010, when Dependency status was terminated.

"On March 27, 2012, [the younger daughter] . . . witnessed a domestic dispute between the parents, . . . in which the parents yelled at each other and engaged in a physical conflict in which they tussled and fell to the ground. The mother ultimately stabbed [the father] in back of the left shoulder with a steak knife. Further, the front door jamb was split, and the mother alleged that [the father] had kicked in the front door when she attempted to force him to leave. Initially the mother did not allow the Agency to assess the children's safety or make a plan to prevent them from being harmed during any other altercations between her and [the father]. WIC 300 (b) and (j) petitions were filed on behalf of the children on May 1, 2012. The mother and [the father] remained uncooperative for much of the investigation period, but eventually agreed to participate in Voluntary Services, to include anger management and domestic violence services. At the Jurisdiction Hearing on June 14, 2012, the petitions were dismissed. Since that time, the mother and [the father] failed to participate in any of the services outlined in the Voluntary Case Plan, and did not maintain contact with the Agency.

"The parents' history of violent and abusive behavior, ongoing uncooperativeness with the Agency, and disregard for the court's orders place [the children] at risk of harm in the care of the parents."

The court sustained the allegations "[b]ased on the evidence presented and the [Agency] reports received, combined with the . . . long history of referrals to the Agency." The court laid particular emphasis on two factors: (1) the "lack of candor on

3

the part of both [parents] in terms of dealing with the situation of the domestic violence incident in March . . . that one strikes me as . . . being the most egregious in terms of my concerns with regard to the safety and well-being of these children. And they had the opportunity . . . to utilize services . . . . And they didn't do it"; and (2) "another thing that struck me as being extremely unsettling was . . . knowing that an investigation by the Agency is going on, . . . [mother] moves, doesn't tell anybody where she is going." The court also noted to mother's counsel: "Ms. Williams, we have heard virtually nothing from your client."

The court announced its dispositional order as follows:

"I agree with Ms. Williams [counsel for mother] as to the responsibilities of the court in connection with the children. I agree that I have to find, by clear and convincing evidence, that there is substantial danger to the children's physical or emotional well-being and there is no reasonable means to protect the children without such removal.

"That is a direct quote from your trial brief, Ms. Williams. In fact, I highlighted it when I read it. And I'm making just such a finding here.

"There is a long history . . . of physical abuse.

"There is domestic violence in the home. Domestic violence of stabbing. Domestic violence is an argument. Domestic violence is a threat. And if that doesn't create an emotionally abusive situation, I don't know what does.

"You have to deal with this before you can be good parents to your children. You are very, very fortunate to have such a large and supportive family to be willing to take on the responsibility that, apparently, both of you are unwilling to deal with after having done nothing about it last year. That is extremely disturbing to the court.

"The history of working with the Agency was abysmal, abysmal last year. And even after you made an agreement, there were two other . . . incidents reported . . . that would qualify as domestic violence.

"I'm finding, by clear and convincing evidence, it is in the best interests of the children to be removed from the care and custody of their parents. That being said, . . . I still hold out hope for both of you. Because it is . . . equally clear to me that you both

care about your children and love your children deeply. But is time to step up and do something about it so that you are not going back and forth and involved with the system on such a regular basis and having to count on your extended family to care for your children because of your unaddressed issues.

"You are going to be given the opportunity to address these issues and put these things behind you. That should be the goal. This should be viewed as an opportunity. The two younger children, . . . probably at their age, would not even remember being exposed to the domestic violence.

"[The older daughter] seems like a very good kid and loves you [addressing the mother]. It is clear. It is very clear. And I'm giving you what I perceive the opportunity to become an even better mother to her. I mean, it is clear to me that you are concerned about her education. When you are involved, she thrives with her education. She loves you dearly. You have a situation . . . now where, if you utilize the services, the remainder of her school career and hopefully the remainder of her and your life will be even better.

". . . [A]lso, we spent, here in San Mateo County, significant time, effort and energy on this case. . . . The sooner the services begin, the better as far as the court is concerned."

Mother contends: "Reversal of the Orders on Jurisdiction and All Subsequent Orders is Called for Because There is Insufficient Evidence to Support the Finding that the Children Come within Subdivision (b) of Section 300" of the Welfare and Institutions Code. The contention is without merit.

At the start of the jurisdictional hearing, and without objection from either parent, the court received in evidence four reports from the Agency. Those reports are legally admissible evidence, notwithstanding that a report is itself hearsay and may contain multiple levels of hearsay. (Welf. & Inst. Code, § 281; *In re Cindy L.* (1997) 17 Cal.4th 15, 21-31.) At a jurisdictional hearing, the report is, by itself, sufficient for a jurisdictional finding. (Welf. & Inst. Code, § 355, subds. (b), (c); Cal. Rules of Court, rule 5.684, subds. (c)-(d).) Those reports have been reviewed, and they fully support the quoted allegations. Moreover, any one of the findings concerning the father would

5

suffice for the assertion of jurisdiction, because "a jurisdictional finding good against one parent is good against both." (*In re Alysha S*. (1996) 51 Cal.App.4th 393, 397.)

Next, both parents attack the decision to remove they children as lacking proof that removal was necessary. "Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that the child would be at substantial risk of harm if returned home and that there are no reasonable means by which the child can be protected without removal. [Citations.] The jurisdictional findings are prima facie evidence that the child cannot safely remain in the home. [Citation.] The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances. [Citation.]" (*In re Cole C*. (2009) 174 Cal.App.4th 900, 917.)

Here, there *was* proof of actual harm, and the parents' history gave ample ground for reasonable apprehension of substantial risk if the children were returned to the setting where the mother had so recently stabbed the father after having failed to benefit from the services proffered in previous dependencies. The case worker put it plainly: "The history of the family, and their behavior during the current case makes it extremely clear that the only way in which the children will be safe while the parents

have an opportunity to engage in services to work on their anger management and parenting skills is through out-of-home care an intensive intervention and supervision by the Agency."

The dispositional order is affirmed.


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Brick, J.*

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.