[No. B215774. Second Dist., Div. One. Apr. 9, 2010.]

In re E.B. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
T.W. et al., Defendants and Appellants.

## COUNSEL

Neale B. Gold, under appointment by the Court of Appeal, for Appellant T.W.

Joseph T. Tavano, under appointment by the Court of Appeal, for Appellant W.B.

James M. Owens, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Respondent.

## OPINION

**CHANEY, J.**—T.W. (Mother) and W.B. (Father) appeal from 2009 jurisdiction findings and disposition orders made by the juvenile court that resulted in E.B. (Son, age 11) and J.B. (Daughter, age 8) being detained with Mother, in Father being ordered to complete a family reunification program, and in Mother being ordered to complete a family maintenance program. The court ordered monitored visits between Father and Son and no contact between Father and Daughter. Because Mother and Father fail to show any error, insufficiency of the evidence, or abuse of discretion, we affirm the juvenile court's orders.

## BACKGROUND

Mother and Father divorced in March 2007, though they lived together periodically until September 2008, when Mother moved with the children to a domestic violence shelter to escape Father's verbal abuse. Father is a registered sex offender, having been convicted in 1989 of violation of Penal Code section 288, subdivision (a) (lewd or lascivious acts with a child under 14), a felony.

On September 15, 2008, the Los Angeles County Department of Children and Family Services (DCFS) received reports from police and nursing staff at the University of Southern California Medical Center that Father had sexually abused Daughter and physically abused Son. Mother alleged Daughter had told her that Father, on separate occasions, had put his penis in her mouth and inserted his fingers inside her vagina. Son had told Mother that at times

Father, naked, would chase him around the house, trying to hit him. In an interview with police officers, Daughter reported Father had entered her room in the middle of the night on approximately eight occasions and inserted his fingers into her vagina and "put[] his thing inside [her] butt" and "hump[ed]" her. Daughter told a nurse that Father inserted his finger in her vagina. Son told DCFS that Father chased him around the house naked and he was afraid of Father because Father hit him frequently and said he was going to kill him.

Mother stated she had never seen Father sexually abuse Daughter or hit Son but that Father had threatened to kill her and the children.

DCFS detained the children with Mother and filed a petition containing allegations against Father under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling).[1] At the detention hearing the court detained the children from Father and placed them with Mother. It ordered no contact between Father and Daughter and monitored visits between Father and Son. On October 8, 2008, the court issued a temporary restraining order for the protection of Mother and the children.

In October 2008, a social worker spoke with Dara Holz, the children's therapist, at the domestic violence shelter where Mother and the children resided. Holz reported that Daughter was suicidal, that she exhibited symptoms of anxiety, flashbacks, anger and panic, and that interviewing her regarding the allegations of sexual abuse would traumatize her. Son also exhibited signs of anxiety.

The social worker interviewed the family. Son reported inconsistently that he was not afraid of Father and that he was afraid of him when Father was angry and chased him around the house. Father never threatened him but punished him by whipping him on his "butt" with a belt. When Father chased Son, Father was dressed in underwear and no shirt, which is the way he walked around the house. Daughter avoided questioning, but did state that she had seen Mother and Father fight.

Father adamantly denied all allegations, calling them "sickening." According to Father, Mother coerced the children into making the false allegations. He stated that Mother had been prescribed medication by her psychiatrist, was paranoid, spoke of spirits, at one point refused to comb her hair for six months, and had previously alleged that her own mother sexually molested Son. Father reported that his sex offender status resulted from an incident with a 13-year-old girl that occurred when he was 18 years old. He was

---

[1] Undesignated section references will be to the Welfare and Institutions Code.

imprisoned for three years after violating the terms of his probation and failing to register as a sex offender. Father denied ever chasing Son while nude or hitting him with a belt. On the contrary, it was Mother who would whip the children with a belt. Father also denied ever having had a physical altercation with Mother. He produced a document showing Mother had been arrested for driving under the influence (DUI) in April 2008, a fact Mother later confirmed.

Mother stated Father rarely spanked the children in front of her, but Son told her Father had beaten him and told him that if he told Mother, Father would kill him. She stated Father abused her emotionally on a regular basis, if she "didn't have his dinner cooked when he wanted it or sex when he wanted it . . . ." He would "call [her] stupid, broke, and say [he has] all the money [she has] nothing and he . . . can take these kids from [her] . . . ." This abuse started after Daughter was born. Mother would sometimes leave, taking the children to her mother's home, but would return with them when Father apologized. Mother also reported that Father struck her four times in February 2008, and that the children did not see it happen but heard her screaming. Mother admitted to taking Prozac for depression and, when told it had been reported that she suffered from mild schizophrenia, responded, "I'm feeling better now on medication, away from him. So much stress."

Maternal grandmother reported that Father verbally abused Mother and "[wore] her down, made her nervous, anxious. Whatever [Father] told her, she believed it." She felt Mother had a drinking problem, using alcohol to self-medicate. She stated that Mother lay in bed all the time, neglecting to wash the children's clothes, and that Father gave Mother only two dollars a day, to keep her from drinking.

Father's nephew reported that Mother has " 'been drinking a lot,' " " 'was drinking beers in the am' " and vodka. " 'She was drinking a lot of things. This is during the day. I've never seen her like this.' "

A Department of Motor Vehicles report indicated that when Mother was arrested for DUI her blood-alcohol content was 0.21 percent. The police report indicated Mother was unable to stand without assistance when she exited the car.

Detective King, of the San Bernardino Police Department, expressed several concerns about the case. He indicated Mother's story had changed several times; Son had told him Mother said she would get a lot of money if Father went to jail; Son became nervous when asked whether Mother had coached him; and although Mother had reported that Father offered her money if she dropped her allegations, Father had recorded messages of

Mother asking him for money. Detective King also reported that Mother had alleged in another spousal abuse complaint that Father had held a knife against her throat and threatened to kill her, but in relating the same incident to social workers she did not say Father held the knife against her or even touched her.

Detective King referred Daughter to the Children's Assessment Center for a forensic interview by Kim Lowenberg, a forensic interview specialist. Lowenberg reported that Daughter stated in the interview that Father " 'did some horrible stuff' " to her. He put his " 'thing' " in her " 'butt' " and it felt " 'mushy' " and " 'nastiest' " and he put his finger in her " 'front private' " and it felt " 'nastiest.' " She recalled that this happened eight times in her room. She also stated that on three occasions Father put his " 'thing' " in her mouth and it felt " 'nastiest.' " Daughter said that Father made her sit down and watch nasty movies, including one with " '2 gay' " girls and one with a " 'man and a woman,' " that the people in the movies were doing " 'nasty stuff,' " and that Father told her that " 'if you don't watch it, I wanna just kill you.' " Daughter said Mother was in Father's room at the time and she thought Mother knew about what was happening to her because " 'stuff from up in heaven makes me know.' "

Lowenberg acknowledged that some of Daughter's statements were inconsistent, but that she was consistent in saying Father sexually abused her.

DCFS provided Mother with a referral for random alcohol and drug testing on December 22, 2008. Mother missed three alcohol/drug tests, on December 30, 2008, and January 7 and 21, 2009. On February 13, 2009, she tested positive for opiates. Mother explained she had been unable to test because she had no identification, and she tested positive for opiates because she was taking prescription Vicodin. DCFS scheduled an appointment to provide Mother with identification to enable her to test, but she did not appear.

DCFS recommended that the children remain placed with Mother at the domestic abuse shelter, that family maintenance services be offered to Mother, and that Mother be ordered to participate in parenting classes, a sexual abuse awareness program, a domestic violence program, individual counseling, random alcohol testing, and a substance abuse program. It recommended that reunification services be offered to Father and that Father be ordered to participate in parenting classes, a sexual abuse program for perpetrators, and individual counseling.

DCFS filed a first amended petition on February 27, 2009, striking several counts and adding count b-5, in which DCFS alleged Mother's "history of drinking alcohol" renders her "incapable of providing regular care and

supervision of the children," "endangers the children's physical and emotional health and safety," and places them "at risk of physical and emotional harm, damage and danger." DCFS also amended count b-4, pertaining to the danger that domestic violence between Father and Mother presents to the children, to allege that both parents' conduct (not just Father's) in their history of domestic altercations (not "violence") endangers the children's physical and emotional health. DCFS alleged in count b-3 that Father inappropriately physically disciplined Son and in d-1 that he is a registered sex offender who had sexually abused Daughter. DCFS recommended that the allegations that Father had sexually abused Son be dropped.

Mother enrolled in a substance abuse program on April 20, 2009, the day before trial.

At the jurisdiction and disposition hearing on April 21, 2009, the court asked if anyone objected to admission of the DCFS reports. No one responded. It then asked if anyone had additional documentary evidence or witnesses to present. Mother and Father indicated they did not, intending to present only argument.

Mother asked that the count regarding her alcohol abuse be dismissed. Father argued that the allegations against him were fabricated by Mother and asked that they be dismissed. The children's attorney asked that the amended petition be sustained.

The court found amended counts b-3, b-4, b-5 and d-1 to be true and declared the children dependents of the juvenile court pursuant to section 300, subdivisions (b) and (d). It adopted DCFS's proposed case plan, ordering the children removed from Father's custody and allowing them to remain with Mother. It ordered Mother to complete drug and alcohol testing, complete a parent education program, and participate in individual counseling. It ordered Father to complete a parenting education program, participate in individual counseling to address sex abuse and domestic violence, and complete a program called "Project Fatherhood," if it was available. The court ordered Father to have only monitored visits with Son and no contact with Daughter.

Mother appeals all April 21, 2009 findings and orders of the court except the order that the children reside with her. Father appeals all April 21, 2009 findings and orders.

## DISCUSSION

A. *Standard of Review*

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.] The

term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]" (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433 [95 Cal.Rptr.3d 235].) "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]" (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564 [135 Cal.Rptr.2d 72].)

## B. *Mother's Appeal*

### 1. *Count B-5: Mother's Alcohol Abuse*

Mother contends evidence of her past alcohol use is insufficient to show she is incapable of providing regular care and supervision of the children or presents a danger to them. Characterizing the record as showing evidence only of an isolated, past incident of alcohol abuse, she argues nothing indicates the abuse will reoccur. We disagree.

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

Mother was arrested for DUI in April 2008. Her own mother and Father's nephew both reported she had an alcohol problem, her mother indicating Mother neglected the children. She missed her first three substance abuse tests and did not enroll in a substance abuse program until the day before trial. The juvenile court thus had ample evidence from which to conclude Mother's continued alcohol abuse rendered her incapable of providing regular care and supervision of the children and endangered their physical and emotional health.

### 2. *Count B-4: Domestic Violence*

As amended, count b-4 of the petition alleges that both parents' conduct in domestic "altercations" endangers the children's physical and emotional health. Mother contends she was exclusively the victim of domestic violence; nothing she did or is likely to do endangers the children.

A child is within the jurisdiction of the juvenile court under subdivisions (a) and (b) of section 300 if he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm," harm that is either "inflicted nonaccidentally upon the child by the child's parent or

guardian" or results from "the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." "[D]omestic violence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [60 Cal.Rptr.2d 315].) Children can be "put in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . ." (*Ibid.*)

"Both common sense and expert opinion indicate spousal abuse is detrimental to children." (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5 [278 Cal.Rptr. 468]; see *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562 [64 Cal.Rptr.2d 93]; Fields, *The Impact of Spouse Abuse on Children and Its Relevance in Custody and Visitation Decisions in New York State* (1994) 3 Cornell J.L. & Pub. Pol'y 221, 228 ["Studies show that violence by one parent against another harms children even if they do not witness it."]; Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions* (1991) 44 Vand. L.Rev. 1041, 1055–1056 ["First, children of these relationships appear more likely to experience physical harm from both parents than children of relationships without woman abuse. Second, even if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents. . . . [¶] Third, children of abusive fathers are likely to be physically abused themselves." (Fns. omitted.)].)

Father's past violent behavior toward Mother is an ongoing concern. "[P]ast violent behavior in a relationship is 'the best predictor of future violence.' Studies demonstrate that once violence occurs in a relationship, the use of force will reoccur in 63% of these relationships. . . . Even if a batterer moves on to another relationship, he will continue to use physical force as a means of controlling his new partner." (Comment, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic Violence* (2000) 75 Wash. L.Rev. 973, 977–978, fns. omitted.)

Mother admitted to DCFS that Father abused her emotionally and physically, the latter within the hearing of the children. When he verbally berated her after Daughter was born she would sometimes leave, but she always returned when he apologized. In February 2008 he struck her four times and the children heard her screaming, yet she stayed with him another seven months. Mother's remaining in the abusive relationship, and her record of returning to Father despite being abused by him, supports the juvenile court's finding that her conduct in the domestic altercations endangered the children.

## C. Father's Appeal

### 1. Hearsay Evidence

Father contends the juvenile court's sustaining the allegations against him on the basis of hearsay statements recorded in DCFS reports violated his due process and confrontation rights under the United States and California Constitutions. He is incorrect.

■ "A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based, to the extent allowed by subdivisions (c) and (d)." (§ 355, subd. (b).) Our Supreme Court instructs that such a study "fits within the class of 'legally admissible' evidence on which a court can rely in a jurisdictional hearing, despite the fact that a social study is itself hearsay and may contain multiple levels of hearsay." (*In re Cindy L.* (1997) 17 Cal.4th 15, 21 [69 Cal.Rptr.2d 803, 947 P.2d 1340].) Only "[i]f any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study" may the specific hearsay evidence "be [in]sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based . . . ." (§ 355, subd. (c)(1).)

Father raised no objection at trial to the DCFS reports. Therefore, admission of the reports, and the juvenile court's reliance on hearsay statements within them, was proper.

### 2. Sufficiency of the Evidence

Father contends evidence contained in the DCFS reports was insufficient to support the juvenile court's jurisdiction and disposition orders. We disagree.

■ Preliminarily, we note that the juvenile court's finding that Father is a registered sex offender is itself prima facie evidence that Son and Daughter are persons described by subdivisions (b) and (d) of section 300 and are at substantial risk of abuse or neglect. (§ 355.1, subd. (d).) This "prima facie evidence constitutes a presumption affecting the burden of producing evidence." (*Ibid.*) The presumption "survives until there is rebuttal evidence submitted." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1041 [14 Cal.Rptr.2d 179].) Because Father admitted to being a registered sex offender and presented no evidence contesting jurisdiction, the juvenile court's finding of jurisdiction under subdivisions (b) and (d) of section 300 is supported by the section 355.1 presumption alone. We affirm the finding on this basis.

Father challenges the evidence supporting the juvenile court's disposition orders on the ground that statements by Mother, Son, and Daughter contained in the DCFS reports were unreliable.

Father essentially asks us to reweigh the evidence and to substitute our judgment for that of the juvenile court. We decline to do so. "It is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence. [Citation.] Under the substantial evidence rule, we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53 [82 Cal.Rptr.2d 426].)

The juvenile court was entitled to find the Mother and the children to be credible. Their statements to police, interviewers and DCFS provided substantial evidence to support the juvenile court's conclusion that Father sexually abused Daughter, physically abused Son, and emotionally and physically abused Mother. It supported the conclusion that Father presented a substantial risk of serious physical harm to both children.

Father appears to argue that even if substantial evidence supports a finding of jurisdiction under a preponderance standard, it does not support the juvenile court's dispositional orders under a clear and convincing standard.

The argument is meritless. The clear and convincing standard was adopted to guide the trial court; it is not a standard for appellate review. (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027].) The substantial evidence rule applies no matter what the standard of proof at trial. "Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881 [101 Cal.Rptr.2d 187].) As noted, statements made by Mother, Son and Daughter to police, interviewers and the DCFS constitute substantial evidence that Father sexually abused Daughter, physically abused Son, and emotionally and physically abused Mother, presenting a substantial risk of serious physical harm to the children. For purposes of appeal, this evidence suffices under either the preponderance or clear and convincing standard of proof.

## DISPOSITION

The orders are affirmed.

Mallano, P. J., and Johnson, J., concurred.