Filed 8/19/24  P. v. Shannon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MATTHEW SCOTT SHANNON,<br><br>     Defendant and Appellant. | G062074<br><br>(Super. Ct. No. 16NF2105)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Mark W. Frederick and Courtney L.C. Cefali, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

*     *     *

After a jury found appellant Matthew Scott Shannon guilty of committing various sex crimes against his daughter K.S. and his step-granddaughter R.L., he was sentenced to 23 years to life.

On appeal, he raises four arguments. First, Shannon contends the trial court erred in admitting a videotaped interview of R.L. in violation of his confrontation rights and Evidence Code section 1360 because she was effectively unavailable for cross-examination since she could not remember the questions asked and her answers during the interview.[1] We find no error because R.L. testified and was responsive to defense counsel's questions. Second, Shannon contends there was insufficient evidence to support his conviction for committing a sex crime against R.L. We conclude the videotaped interview constitutes substantial evidence to support the jury's verdict. Third, Shannon argues the trial court erred in admitting evidence of uncharged sexual misconduct. We conclude the evidence was admissible under sections 1101, subdivision (b), 1108, and 352 because the uncharged conduct was highly probative, but not more inflammatory than the charged crimes. Finally, Shannon contends the trial court erred in denying his motion for a new trial based on newly discovered evidence he reported an alleged extortion attempt by K.S.'s mother. We conclude Shannon has not shown the evidence could not have been discovered with reasonable diligence or that it casts doubt on the jury's verdict. Accordingly, we affirm.

---

[1] All further statutory references are to the Evidence Code, unless otherwise stated.

2

## PROCEDURAL HISTORY

On February 18, 2022, the Orange County District Attorney filed an information alleging that Shannon engaged in oral copulation with R.L., a child 10 years of age or younger, between May 30, 2012, and June 29, 2016, (Pen. Code § 288.7, subd. (b); count 1); engaged in oral copulation with K.S., a person under 14 years of age and more than 10 years younger than appellant, between August 29, 2002 and August 28, 2006 (Pen. Code, § 288a, subd. (c)(1); count 2)[2]; and committed a lewd and lascivious act upon K.S., a child under the age of 14 years, between August 29, 2002 and August 28, 2006 (Pen. Code, § 288, subd. (a); counts 3 and 4). The information also alleged that as to count 3, Shannon engaged in substantial sexual conduct with K.S., a child under 14 years of age, during the commission of count 3 (Pen. Code, § 1203.066, subd. (a)(8)).[3]

A jury found Shannon guilty as charged, and found true the allegation of substantial sexual conduct.

After denying Shannon's motion for a new trial, the trial court sentenced him to 15 years to life, followed by eight years in state prison.

## DISCUSSION

### I.

*Admission of Victim's Videotaped Interview*

Shannon contends the trial court erred in admitting the videotaped interview of R.L. in violation of his confrontation rights and section 1360. We find no error.

---

[2] Penal Code section 288a later was renumbered to Penal Code section 287.

[3] The Orange County District Attorney charged Shannon with the same offenses in 2017. After a hung jury, the trial court declared a mistrial.

A.    *Facts*

R.L. is the granddaughter of Shannon's second wife.  On June 29, 2016, when R.L. was four years old, she told her mother that Shannon had licked her vagina, which she referred to as her "powder puff."

The following day, R.L was interviewed at the Orange office of Child Abuse Services Team (CAST).  During the CAST interview, R.L. stated that Shannon licked her powder puff when she was alone in her room, lying on her bed.  It happened "lots of times."  R.L. demonstrated Shannon's conduct using teddy bears.

Before trial, the prosecution moved to admit R.L.'s videotaped CAST interview pursuant to section 1360.  The prosecution argued that R.L. "was able to distinguish between a truth and a lie," "verbally describe[ ] what [Shannon] had done, and appropriately demonstrated what [he] had done to her body by using the bears."  The prosecutor asserted R.L. would be available for trial and subject to cross-examination.

Defense counsel moved to exclude or limit this evidence on confrontation clause grounds and section 1360.  Based on R.L.'s trial testimony during the first trial, defense counsel argued there was "no confrontation available" and "no reasonable opportunity to cross-examine" because R.L. "didn't have answers for [the prosecutor's] questions, didn't recall, or doesn't remember during the interview, et cetera."  Specifically as to section 1360, counsel argued R.L.'s responses did not constitute testimony because the responses did not provide a reasonable opportunity for cross-examination.

The trial court admitted the interview, finding that R.L.'s interview fell "within the parameters of [section] 1360 in that the time, content, and circumstances of the statement provide sufficient indicia of

4

reliability." The court also found no confrontation clause violation since defense counsel would "have the opportunity to cross-examine [R.L.]"

At trial, R.L., who was nine years old, testified she did not fully recall Shannon or her interactions with him. She did not remember his face, but remembered his hair color. She remembered going to his house, but did not remember where the house was located or what it looked like. As to her interactions with Shannon, she did not "remember what happened or what he was like." As to the CAST interview, she remembered "talking to an old lady" and playing with "puppets." On cross-examination, R.L. testified she did not remember the questions that were asked or her answers during the CAST interview.

After R.L.'s testimony, appellant renewed his objection to playing the recording of the CAST interview based on "Sixth Amendment grounds, confrontation issues." Defense counsel acknowledged he was able to "cross-examine her on some peripheral matters," but argued he "was not given a full and fair opportunity to cross-examine, since she had zero memory about being molested or about being questioned or any answers that she may have given during the CAST." In response, the prosecution argued there was no Confrontation Clause problem where the declarant is available for cross-examination. Here, "the People made . . . [R.L.] available," and "[s]he testified to what she could remember" and answered all of defense counsel's questions.

The trial court overruled the objection, again finding the interview was admissible under section 1360.

B.      *Confrontation Clause*

"The Confrontation Clause of the Sixth Amendment gives the accused the right 'to be confronted with the witnesses against him.' This has

long been read as securing an adequate opportunity to cross-examine adverse witnesses. [Citations.]" (*United States v. Owens* (1988) 484 U.S. 554, 557 (*Owens*).)  However, "'[t]he Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.  To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.'" (*Id.* at p. 558, quoting *Delaware v. Fensterer* (1985) 474 U.S. 15, 21-22.)  "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." (*Owens*, at p. 560.)  In fact, the United States Supreme Court has never found a Confrontation Clause violation based "upon a witness' loss of memory." (*Id.* at p. 557.)

Although *Owens* predates *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the U.S. Supreme Court did not overturn *Owens* in the latter case.  Rather, in footnote 9 of its *Crawford* decision, the Court stated: "[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.  [Citation.]  It is therefore irrelevant that the reliability of some out-of-court statements "'cannot be replicated, even if the declarant testifies to the same matters in court.'"  [Citations.]  The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." (*Id.* at p. 60, fn. 9; see also *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 965 (*Giron-Chamul*) ["[A] witness's

failure to remember, whether real or feigned, generally does not deny the defendant an opportunity for effective cross-examination. [Citations.]".)

Here, R.L. was subject to cross-examination at trial, and she answered questions from defense counsel.  Unlike the child witness in *Giron-Chamul*, *supra*, 245 Cal.App.4th 932, R.L. did not refuse to answer counsel's questions. In that case, the appellate court found a Confrontation Clause violation based on the victim's "refusal" to answer questions on cross-examination. (*Id.* at pp. 961, 965.) The victim, who was five years old at the time of trial, refused to answer hundreds of questions that were posed to her by defense counsel. (*Id.* at p. 968.) In contrast, R.L., who was nine when she testified, sat on the witness stand, and answered the questions put to her by the prosecutor and defense counsel.  At times she testified that she did not remember certain details, but she was cooperative and never refused to answer a question.  There was no Confrontation Clause violation.

C.    *Section 1360*

Section 1360, subdivision (a) provides in relevant parts:

"In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child either:

"(A) Testifies at the proceedings.

"(B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child."

Shannon argues R,L. was effectively unavailable because at trial, she "failed to identify Shannon as her 'Papa,' had little memory of the CAST interview, and had no recollection of being inappropriately touched." Those responses however constituted testimony because they were answers given under oath at trial. (See Black's Law Dictionary (11th ed. 2019) [defining "testimony" as "Evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition."].) Moreover, R.L. testified that she remembered Shannon's hair and going to his house. She also remembered "talking to an old lady" and playing with "puppets." Thus, R.L. did testify for the purposes of section 1360.

Shannon also contends the trial court erred in determining the time, content, and circumstances of the CAST interview provided sufficient indicia of reliability. However, he forfeited this claim because trial counsel never objected to the trial court's finding on reliability. Rather, counsel only objected on the ground that R.L. did not testify for the purposes of section 1360, which we addressed above. (See *People v. Partida* (2005) 37 Cal.4th 428, 435 [a party "may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial. A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct."]; see also § 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an

8

objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ."].)

Regardless, the record before us shows the time, content, and circumstances of the CAST interview provided sufficient indicia of reliability. To determine whether a child witness's hearsay statement is reliable, "any factor bearing on reliability may be considered." (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1250.) These factors include: "(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate," and (5) "the child's ability to understand the duty to tell the truth and to distinguish between truth and falsity." (*In re Cindy L.* (1997) 17 Cal.4th 15, 30.) Here, our independent review shows several factors support the trial court's finding of reliability. First, R.L. consistently told questioners that Shannon orally copulated her, both to her mother and the CAST interviewer using similar childish terminology. Second, she was able to demonstrate the criminal act using teddy bears, something that would be unexpected of a four-year-old child. Third, she lacked motive to fabricate. When asked about Shannon, her response was "I love him, and I miss him. He's probably at work today." Finally, her responses showed she understood the duty to tell the truth and distinguish between truth and falsity. In sum, we find no error in trial court's decision to admit the videotaped interview of R.L.

## II.

### *Sufficiency of the evidence*

Next, Shannon contends there was insufficient evidence as to Count 1 (engaging in oral copulation with R.L.). Specifically, Shannon argues the victim's statements to her mother and during the CAST interview were

insufficient because they were uncorroborated and vague on when and where the crime occurred.

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)  "Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction." (*Ibid*.)  In the context of child molestation cases, a child victim's testimony is substantial evidence of guilt if the testimony describes "the *kind of act or acts* committed with sufficient specificity," "the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment," and "*the general time period* in which these acts occurred . . . to assure the acts were committed within the applicable limitation period." (*People v. Jones* (1990) 51 Cal.3d 294, 316.)

Here, in her CAST interview, R.L. specified the conduct (oral copulation) and its frequency ("lots of time").  Although she did not specify the time period, her testimony established that the criminal conduct occurred in the time period between her birth and when the crime was reported, between May 2012 and June 2016, as charged in the information.  As the initial prosecution occurred in 2017, the sex crime fell within the applicable limitations period.  (See Pen. Code, § 800 ["an offense punishable by imprisonment in the state prison for eight years . . . shall be commenced within six years after commission of the offense"]; Pen. Code, § 288.7, subd. (b) ["Any person 18 years of age or older who engages in oral copulation . . .

10

with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life."].)  In sum, R.L.'s statements in the CAST interview are sufficient to support the conviction on Count 1.

III.

*Evidence of Uncharged Conduct*

Shannon contends the trial court abused its discretion in admitting evidence of uncharged conduct, namely, (1) Shannon's possession of child pornography and sexually explicit stories, and (2) the complaints of his nieces J.B. and F.B. that he touched them inappropriately.

A.    *Facts*

1.    *Child pornography and child erotica*

M.S., Shannon's first wife, testified that in 2000, she found several printed pornographic stories regarding "father/daughter incest" in their home office.  She confronted appellant, who admitted the stories belonged to him.   In 2003, in the midst of their bitter divorce and after Shannon had moved out, M.S. was looking for earnings statements from their business when she discovered 36 floppy discs and 25 compact discs, some of which contained pornographic images of young, nude children.  She became worried and took the discs to the local police department.

In 2020, the Orange County Regional Forensic Laboratory examined the floppy discs and compact discs.   Some of the discs contained "thousands" of images of child pornography and child erotica, and "hundreds" of sexually explicit stories involving minors and incest.   The jury saw seven photos and heard excerpts from one story.

11

### 2. *Uncharged acts against minors*

J.B., who is the niece of Shannon's second wife, testified she had several unusual interactions with Shannon when she was very young. The first was when she was in preschool, after she did not allow him to tie her shoes, he told her to go to her bedroom. After taking off her pants or telling her to take off her pants, he spanked her very hard. The other incident occurred about two years later, when J.B. was in first grade. Shannon drove the two of them to pick up pizza and allowed her to sit in the front passenger seat. Then, he had her suck on his thumb. While she did, he said, "deeper," and "good girl." J.B. did not tell anyone about these incidents until she was 17 years old when her mother asked if anyone had ever touched her or done anything inappropriate to her. A few weeks after telling her mother, J.B. reported to the police in 2016.

F.B., the younger sister of J.B., testified that when she was around four years old, she was at a party where Shannon was present. He asked her to play hide-and-seek with him. While playing, the two of them went into a bedroom, and Shannon asked her "Oh, what's in your diaper." He then laid F.B. on the bed, pulled down her diaper, and inserted his fingers into her vagina.

F.B. did not tell her mother about this incident until years later, after she began having nightmares about it. F.B. asked her mother not to tell anybody else. F.B. did not formally report the incident to the police until 2020.

### 3. *Defense case*

Shannon testified in his own defense. He denied ever molesting K.S., R.L., or J.B. and F.B. Regarding the child pornography and incest-

12

themed stories his first wife M.S. found in the office, Shannon asserted he had never seen any of it until he "saw them as evidence in this case."

B.    *Analysis*

Generally, character evidence, including "evidence of specific instances of his or her conduct[,] is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).)  However, section 1101, subdivision (b), allows evidence of a prior act to be used to prove a fact other than propensity, such as intent, motive, or a common scheme.  Section 1108, subdivision (a) provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (b).)  Section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Here, the trial court did not abuse its discretion in determining the accusations of J.B. and F.B., the child pornography, and the sexually explicit stories were not made inadmissible by section 352. The evidence was highly probative, establishing Shannon had a prurient interest in very young girls.  Although inflammatory, the evidence was not more inflammatory than the charged crimes, which included one count of oral copulation committed against a step-granddaughter and multiple sex crimes against his biological daughter.  Moreover, there was no undue consumption of time.  The seven witnesses were not excessive.  Nor was there a likelihood of confusing the jury. Shannon was not charged with possession of child pornography, and the

13

incidents involving J.B. and F.B. were distinct from those involving R.L. and K.S. The trial court thus properly admitted the accusations of J.B. and F.B. and the child pornography under Section 1108.

As to the sexually explicit stories and other child erotica, that evidence was admissible under section 1101, subdivision (b) to show intent. (Cf. *People v. Memro* (1995) 11 Cal.4th 786, 864 [evidence defendant possessed "sexually explicit stories, photographs and drawings of males ranging in age from prepubescent to young adult" were properly admitted under Evidence Code section 1101, subdivision (b), to show defendant's intent to molest a young boy in violation of Penal Code section 288].) In sum, the court did not abuse its discretion in admitting this evidence.

IV.

*New Trial Motion*

Finally, Shannon contends the trial court erred in denying his new trial motion based on newly discovered evidence.

A.    *Facts*

1.    *Trial Testimony*

At trial, during cross-examination, Shannon's first wife M.S. testified meeting with Shannon on two occasions to discuss K.S.'s molestation accusations. At the second meeting, M.S. remembered Shannon claiming she was "threatening [him] financially." When asked whether Shannon handed her "a police report that he [Shannon] had filed with Corona [Police Department]," M.S stated she did not recall, but later stated she believed she received a police report. On redirect examination, M.S. clarified Shannon gave her a paper which she thought was a police report, but the police never contacted her, and "I don't remember anything coming of it."

14

Shannon testified that when he met with M.S. to discuss K.S.'s accusations against him, she "threatened" him that he either needed to pay for K.S.'s college "tuition and support or there would be consequences with the police." Because he believed he was being extorted, he went to the Corona Police Department to report K.S.'s molestation allegations and M.S.'s threat. He requested a police report, which he later showed to M.S. However, he no longer has a copy of the report.

In rebuttal, Silvia Hernandez, the records supervisor for the Corona Police Department, testified she ran a records check and found no report involving Shannon and extortion in July 2011. Hernandez acknowledged the records are regularly purged from the system, with misdemeanors being purged after five years.

### 2. *New Trial Motion*

After the jury found him guilty as charged, Shannon moved for a new trial on the ground, among others, of newly discovered evidence pursuant to Penal Code section 1181, subdivision 8. The newly discovered evidence was a computer printout of an "Incident Inquiry" prepared by the Corona Police Department documenting Shannon had stated his ex-wife M.S. had threatened to report him for molesting their daughter six years ago if he did not meet her financial demands. The document further stated Shannon did not desire prosecution, and concluded the accusations were "unfounded at this time as no contact has been made with ex-wife." Shannon's son discovered the document on an "old computer[ ]" while searching several computers for an unrelated document in April 2022.

Shannon argued he and his defense counsel exercised reasonable diligence to locate the document when counsel hired an investigator to seek out the report. In the investigator's declaration, he stated he contacted

15

Corona Police Department in September 2019 and was informed that no report could be located using the names of Shannon or his first wife.

Following a hearing, the trial court denied the new trial motion. As to the newly discovered evidence, the court found it was not cumulative because it would support Shannon's claim he made a police report. However, it "looks like it was available to everybody this whole time, especially to Mr. Shannon." Thus, "with reasonable diligence, it could have been discovered on [Shannon's] computer. It was with his attorney." The court also did not believe "that that particular piece of paper would have changed the result" since "so much of [his] testimony relied on his credibility in regards to so much other conduct in this case."

B.    *Analysis*

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: 1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits." (*People v. Delgado* (1993) 5 Cal.4th 312, 328, internal quotations and citations omitted.) "In addition, 'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' [Citation.]" (*Id*. at p. 329.) "'"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."' [Citations.]" (*Id*. at p. 328.)

16

The trial court did not abuse its discretion in denying the new trial motion based on newly discovered evidence. Shannon did not show he or his counsel exercised reasonable diligence. The document was located on computers available to Shannon or his counsel, but no attempt was made to search the computers. The only documented attempt to locate the document was a single inquiry with the Corona Police Department. Shannon also contends he searched for the document, but the record citation does not support this contention.

Shannon also seeks to excuse his lack of diligence by noting he was in possession of a number of computers and a large amount of digital evidence. However, he documented no effort to search any of those computers or digital evidence. Moreover, the fact his son was able to locate the document by searching in April 2022 indicates a reasonable effort likely would have resulted in locating the document.

Shannon further argues lack of diligence alone is not sufficient to justify a denying a new trial motion based on newly discovered evidence. We disagree. While it is true "the standard of diligence may be relaxed when the newly discovered evidence would probably lead to a different result on retrial," (*People v. Martinez* (1984) 36 Cal.3d 816, 825, fn. omitted), we are not persuaded the document probably would have resulted in a different result on retrial. The best evidence against Shannon was K.S.'s trial testimony and the CAST interview. The criminal acts were not witnessed by M.S. Thus, her alleged extortion would not undermine the evidence against Shannon. In sum, we cannot conclude that the trial court abused its broad discretion in denying the new trial motion based on newly discovered evidence.

17

## DISPOSITION

The judgment is affirmed.

DELANEY, J.

WE CONCUR:

O'LEARY, P.J.

SANCHEZ, J.