Filed 8/21/25  P. v. Rosas CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR ROJAS ROSAS,<br><br>    Defendant and Appellant. | F087745<br><br>(Super. Ct. No. MCR078784)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Jesica Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Victor Rojas Rosas sexually abused his girlfriend's daughter, A. Doe, over a period of three years starting when she was about seven years old. Defendant was convicted of sexual intercourse or sodomy with a child (Pen. Code, § 288.7, subd. (a)),[1] and continuous sexual abuse of a child (§ 288.5, subd. (a)). The trial court sentenced defendant to an aggregate indeterminate term of 100 years to life for the discrete sex offenses. A 12-year prison term was imposed and stayed for the continuous sexual abuse conviction.

On appeal, defendant contends (1) he received ineffective assistance of counsel for his attorney's failure to object to admission of Doe's forensic interview at trial, (2) his convictions for the discrete sex offenses and continuous sexual abuse against a single victim during an overlapping period violate section 288.5, subdivision (c), (3) the matter must be remanded for the trial court to determine which counts to vacate, and (4) if the section 288.5 conviction is vacated on appeal, the fine under section 294, subdivision (a) for that conviction must be vacated.

The People respond that defendant did not receive ineffective assistance of counsel because he cannot show deficient performance or prejudice resulting from admission of Doe's forensic interview. The People agree multiple convictions for the discrete sex offenses and continuous sexual abuse are improper but argue the proper remedy is to reverse the section 288.5 conviction and vacate the related fine.

We agree defendant was improperly convicted of overlapping discrete sex offenses and continuous sexual abuse in violation of section 288.5, subdivision (c). We therefore vacate both the continuous sexual abuse conviction and related section 294 fine. As modified, we affirm.

## PROCEDURAL SUMMARY

On January 11, 2024, the District Attorney of Madera County filed an amended

---

[1] Undesignated statutory references are to the Penal Code.

2.

information charging defendant with five counts of sexual misconduct against Doe, born in 2013, including two counts of sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a); counts 1, 2); two counts of sodomy with a child 10 years of age or younger (§ 288.7, subd. (a); counts 3, 4); and one count of continuous sexual abuse of a child under the age of 14 years (§ 288.5, subd. (a); count 5). All five counts were alleged to have occurred between January 4, 2020, and August 30, 2023.[2] Defendant was born in February 1984 and was between the ages of 35 and 39 during this period. The information alleged two aggravating circumstances: defendant took advantage of a position of trust or confidence (Cal Rules of Court, rule 4.421(a)(11)); and the victim was particularly vulnerable (Cal Rules of Court, rule 4.421(a)(3)).

On February 7, 2024, the jury found defendant guilty on all five counts. After the verdict, the trial court granted the prosecutor's motion to dismiss the two alleged aggravating circumstances.

On March 11, 2024, the trial court sentenced defendant to 100 years to life in prison, consisting of four consecutive 25-year-to-life terms on counts 1 to 4. The court imposed and stayed pursuant to section 654 a 12-year term on count 5. The court also ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)), a $300 suspended parole revocation restitution fine (§ 1202.45), a $1,170 fine (§ 672), a $1,230 fine (§ 290.3), and an $820 fine (§ 294, subd (a)).

Defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

### Relationship Between Doe's Mother and Defendant

Celia A., Doe's mother, met and began dating defendant when Doe was about three and a half years old. Celia described her relationship with defendant as "really bad." Sometimes defendant was loving, and other times he was aggressive. He was

---

[2] The date range for count 5 was amended during trial as will be further discussed herein.

quick to anger and mad if Celia got off work late or did not answer his calls.

Celia, defendant, and Doe lived together for about two and a half years in a house on Avenue 9 in Madera. The house had one bedroom, a living room, and a kitchen. Doe slept in the bedroom, and Celia and defendant slept in the living room.

Celia and defendant argued while they lived together, sometimes in front of Doe. Doe saw defendant yell at Celia. One time, defendant punched Celia in the nose, causing her to bleed. Doe did not see this happen because she was in the bedroom on her tablet. Another time, defendant hit Celia in the eye, leaving her with a bruise. Doe was at school when this happened but saw the bruise later. Celia told Doe Celia was fine, and nothing had happened.

Celia worked in fields six days a week, starting at 7:00 a.m. She testified she did not leave Doe home alone with defendant when they lived together. She took Doe to school or put her on the bus to school. If Doe was sick, Celia took her to be with her adult son, Jason A., at his house on Avenue 11.

In November 2022, Celia and Doe moved into a three-bedroom house on Avenue 11 in Madera where Celia's two adult children, Jason and Sulema A., already lived. Jason and Sulema had their own bedrooms while Celia and Doe shared the third bedroom. Celia and Doe slept in separate twin beds in their room.

Defendant did not live at the Avenue 11 house, but he stayed there two or three times. He shared a bed with Celia at the Avenue 11 house. Celia and defendant slept naked while Doe was also sleeping in the room in her bed. Though Celia and defendant had become just friends, they had sex in the room while Doe slept. To Celia's knowledge, Doe never accidentally saw defendant naked. Celia had not seen defendant touch Doe inappropriately or say anything inappropriate to her.

At one point, Doe asked Celia why defendant was still coming over to the Avenue 11 house. Around August 2023, Celia returned to the Avenue 11 house from

4.

work and saw defendant jump out of one of the house windows.  Celia asked defendant why he was inside the house because she and defendant were mad at each other at the time.  Defendant did not reply and left.  Doe was inside the house in the bedroom she shared with Celia.  Celia asked Doe what defendant was doing there, and Doe replied, "Nothing."  Jason was also inside the house in his own bedroom.

### *Doe Discloses the Abuse*

On August 30, 2023, Doe was attending elementary school and in fifth grade.  The school principal called Doe into her office because Doe had used her tablet to show another student a pornographic website.  Doe was distraught and crying when confronted by the principal and admitted she had shown another student the website.  The principal asked Doe where she had learned about the website.  Doe said her stepfather, "Victor," had shown the website to her and told Doe she could show it to others if she wanted.  Based on Doe's responses, the principal asked Doe if she was safe at home.  Doe shook her head no.  The principal asked Doe why she was not safe, and Doe responded, "My stepfather rapes me."  Doe was still distraught and crying.  Pursuant to her training, the principal ended Doe's interview and contacted the sheriff's department.

After Doe's report to the principal, Celia was contacted at work.  Celia left work immediately and went to Doe's school.  When Celia arrived, the principal told her what was happening.  Before then, Doe had never told Celia that defendant had done anything inappropriate to her.

Madera County Sheriff's Detective David Ochoa came to Doe's school in response to the principal's call.  Ochoa spoke with Celia and asked her to call defendant.  The sheriffs were able to locate and arrest defendant through Celia's call.  Ochoa scheduled a child forensic interview (CFIT) of Doe for the following day.  A social worker with Child Protective Services also went to Doe's school and spoke with Doe.

Sandra Avalos, a forensic interviewer with the Chowchilla Police Department,

conducted the CFIT of Doe on August 31, 2023. Avalos's interview of Doe was video recorded. Toward the start of the CFIT, Avalos confirmed Doe understood the difference between the truth and a lie using a table and a chair.

Doe told Avalos she showed her friend, a fellow student, some "inappropriate videos because [the friend] said she was interested in that type of stuff." Doe was just curious. She confirmed she showed the friend a video of sex. She said her "father" showed her this website called X and X-X. Doe said her father told her to "show anyone that website if they were interested in that type of stuff." She identified her father as "Victor." He showed sex videos to Doe on his phone in the bedroom Doe and her mother shared. Doe said they would just sit and watch the videos together. There were multiple males and multiple females together in the videos.

Doe told Avalos there was "some other stuff," but she didn't want to go into it because it made her uncomfortable. Avalos suggested Doe write it down. Doe wrote, "[H]e would rape me." When asked when this happened, Doe said, "A few years ago." Avalos calculated this would have been when Doe was seven years old. Doe said the last time was "[j]ust a few weeks ago." Doe admitted she forgets easily.

Avalos asked Doe what "rape" means. Doe explained that rape is when "you're having sex with someone that—that is on purpose, and you don't, uh, that I didn't give them permission to." When asked to describe what sex is, Doe explained sex is something that "one male and one female do most of the time when they're adults." Avalos asked Doe if she and defendant had sex. Doe responded it made her feel uncomfortable because she never "had it before" and is still a child. She said this happened mostly on the ground in the room Doe shared with her mom. Doe was unsure how many times this happened. It only happened when her mother was not at home. Doe's brother was at home, but he was always in his room wearing his headphones. Defendant only stayed at the house when Doe's sister was away.

Because Doe was uncomfortable saying which parts of her body defendant had touched, Avalos brought out a body diagram for Doe to circle the places on her body defendant had touched. Doe circled the breasts, vagina, back, and buttocks on the diagram. Doe knew the correct name for "breast" but was unsure of the names for other body parts besides the back. She told Avalos she did not know the names for private parts. She said defendant would touch her under her clothes and underwear. Doe reported defendant touched her many times "inside the area that [she goes] to the bathroom with." She said, "It's called child rape," and a person could go to jail or prison. Defendant touched Doe using his "private male part," and put his part inside Doe's parts. Doe said her private parts "got a little bigger" when defendant put his part inside her. Defendant held Doe's hands and moved his body around while inside Doe. This hurt and made Doe feel weird and uncomfortable. Defendant sometimes put his private part "inside the area where the poop comes out of." He told Doe not to tell anyone. She thought defendant did not want her to tell anyone because he did not want to get in "big trouble" and go to jail or prison. Doe had not told anyone what happened with defendant until the day before. What happened made Doe's leg hurt, and she was unable to do physical education.

Doe thought defendant was a great father "before all of that happened," but said he was terrible after. Doe wanted to hit defendant "a lot" and once hit him when he and her mom were arguing. She reported being happy defendant was arrested. When asked if anyone told her what to not tell Avalos, Doe responded, "Yeah. I don't remember."

Ochoa attended the CFIT. He searched the website Doe discussed during the interview and discovered it was a pornographic website. Ochoa testified that sexual assault medical examinations are typically done within five days of the last assault. Because Doe reported the assaults a few weeks after the last assault, the police did not conduct a medical examination of Doe.

### *Doe's Trial Testimony*

Doe was 11 years old when she testified at trial. She could not remember why she had to speak with her school principal a few months earlier. She remembered talking to the principal and crying but could not recall what made her cry. Doe confirmed she got into trouble for something she was looking at, but denied it was on her tablet and testified she was using someone else's phone. She remembered telling the principal that she was looking at "things" defendant had shown her on his phone. Doe told a friend about the website, and the friend looked it up on her phone.

Doe could not remember what defendant showed her on his phone, but it made her uncomfortable. She was interested in what he showed her because she had not seen anything like it before. Doe remembered talking to Avalos back in August and telling her about looking at defendant's phone, but she did not remember telling Avalos the website's name. She thought she remembered seeing videos on the website and telling Avalos the videos sometimes had a boy and a girl, sometimes more than one boy and more than one girl. Doe was seven or eight years old when defendant showed her these things on his phone. He showed Doe these things more than one time.

Doe testified something happened with defendant more than once that made her uncomfortable. One time, she and defendant were in the room Doe shared with her mother. Jason was in the house in his room. Doe could not remember what happened between her and defendant.

Doe initially testified she did not remember telling Avalos that defendant touched her. She felt uncomfortable talking about these things in front of the jury. Doe then confirmed she told Avalos that defendant touched her breast. She said defendant touched her breast with his hand more than one time, but she could not remember where they were when this happened. Doe said defendant had touched her in the places on the diagram where she had circled parts of the body. She thought she was younger than

8.

10 years old the first time defendant touched her. Doe said defendant had touched her more than once at her current house and her previous house. She circled "male private body part" on the diagram discussed with Avalos because defendant touched her with that part.

Doe confirmed defendant touched her with his private part on her two parts she "use[s] [for] the bathroom." Doe used a pen and tissue box to show that defendant put his private part inside her "private part." Defendant told Doe more than twice not to tell anyone about what they did. This made Doe feel unsafe. She was afraid of defendant. She confirmed she talked to her school principal about what defendant did.

On cross-examination, Doe testified she saw defendant and Celia arguing many times. This included loud arguing and made Doe feel unsafe. She felt angry towards defendant.

Doe felt like she was in trouble and was nervous when she went to the principal's office on August 30, 2023. She could not remember what she was looking at with the other student before she got in trouble but remembered telling Avalos they were looking at "[p]eople having sex." Doe recalled telling Avalos the videos made her uncomfortable but also curious. She denied ever watching the videos by herself but watched the videos with defendant. Doe and defendant began watching the videos when they were alone at the Avenue 9 house while Celia was at work. Celia left Doe home alone with defendant sometimes. Doe considered defendant "like a dad" because they did activities together, like playing soccer.

Doe confirmed she told Avalos that defendant had told her to show the videos to others if they were interested in that kind of stuff, but she initially denied showing the videos to other students at school. She then said she showed the videos to her friend who went to the same school. The friend gave her phone to Doe to look up the videos because the friend wanted to see them.

Doe understood "rape" to mean "having sex with someone but you did not give them permission." She saw defendant's "private part" more than once but could not describe what it looked like. Doe could not remember where this occurred. When pushed on whether she could not remember because it did not happen, Doe insisted it did happen, but she forgets easily. She could not understand several questions from defense counsel about what happened between her and defendant. Doe eventually said she was uncomfortable telling counsel about it.

Doe testified defendant did something to her in her room at the Avenue 9 house, but she could not remember what. She recalled defendant walking into her room but could not remember what happened next. Doe was able to see defendant from a little light from the window. She testified defendant grabbed her arm with his hands while she was in bed in her pajamas. Doe felt something touch her leg while defendant was holding her arm. She tried to hit defendant with her other hand. Doe felt "something" weird on the middle section of her body, but she could not see what it was. Defendant was standing next to the bed and did not get into the bed with Doe. Doe said defendant removed her underwear. She did not feel anything come inside her body where she goes "pee" or "poop." Doe heard something coming from outside the house that she thought was Celia coming home, so Doe and defendant stopped.

Celia left Doe home alone with defendant at the Avenue 9 house. One time, Doe was on her bed drawing on her tablet when defendant came into the bedroom. Doe was a little sick and tried to tell defendant to leave the room but was unable to do so. She testified defendant grabbed her hand while she was drawing but she did not remember what happened next. Defendant did not touch her anywhere else or remove her clothes.

Doe testified that at a different time, defendant grabbed her arm in the living room of the Avenue 9 house. She was confused during her testimony about which house was being discussed. Doe did not remember anything else happening other than defendant

10.

grabbing her arm. She said she felt pain in her back and arms but was uncomfortable saying where else on her body she felt pain. Doe was permitted to write down her response, and she wrote, "He would use his male part to go into my two female parts." When asked what caused her to feel pain, Doe asked if she could write it down. Doe wrote, "Him putting his male part in my female body parts." She saw defendant's male private part because he took his pants and underwear off. Doe could feel defendant put his "male private part" inside her "female body part." She said defendant did this many times. Doe testified she was able to participate in physical education at school the week after this incident.

Defendant visited the Avenue 11 house, but he did not live there. He spent the night in the room Doe shared with Celia and shared a bed with Celia. Doe noticed her mother was naked in the bed but did not notice if defendant was naked. She did not know if she saw defendant and Celia having sex in their room.

One time, Doe had just taken a shower when defendant used a window to come into the Avenue 11 house at night. Doe's mother and sister were not home. Defendant touched Doe's back and her "private part" she uses to "go pee" underneath her clothes. Doe felt defendant using his hands to touch her private part.

### Defense Evidence

Ines Corral testified for the defense. Corral had known defendant for three years, and he lived with her. He stayed with her for three or four months in 2022 in a little room in the back of her house and paid rent. Defendant also stayed in Corral's living room for maybe two or three months in 2023. He did not pay rent that time but helped around the house. There were nights defendant did not stay at the house while he lived with Corral.

Corral and defendant would talk regularly and spent time together while he lived in her house. She found defendant to be a very helpful, respectful, and polite young man. He never disrespected Corral or her children.

11.

Corral was a caretaker for her two grandchildren, ages five and seven. She never saw any odd behavior between defendant and her grandchildren. Defendant always respected the kids. Corral never had any issues with defendant.

**DISCUSSION**

## I. Admissibility of the CFIT

Defendant contends Doe's recorded statements from the CFIT were inadmissible because the CFIT lacked the required indicia of reliability and his counsel was ineffective for failing to object to its admission.

### A. Additional Background

Prior to trial, the prosecutor filed an in limine motion to play the video of the CFIT to the jury in its entirety pursuant to Evidence Code section 1360. Defendant's attorney did not object to the CFIT's admissibility and conceded to the trial court the CFIT "would suffice for enough indicia of reliability in so long as all the other elements are—are met for Evidence Code [section] 1360." She reserved further objection if Doe did not testify, or if other issues arose with the CFIT or its admission.

Avalos testified after Doe and confirmed Doe's CFIT was video recorded. The prosecutor moved to admit the video as a trial exhibit during Avalos's testimony without objection by defense counsel. The video was admitted into evidence and played for the jury.

After the trial court and the parties finished conferring on jury instructions, the prosecutor noted the CFIT transcript had not been admitted into evidence and requested it be admitted. Defense counsel objected to the transcript's admission without giving a reason for the objection. The court noted the objection and reopened the record to admit the transcript.

During closing argument, defense counsel argued Doe had reasons to lie because she doesn't like defendant and felt like she was in trouble when she was called to the

12.

principal's office. Counsel observed that Doe said, during the CFIT, that she knows people go to jail or prison for this kind of conduct and she "wanted to get rid of [defendant]." Counsel pointed out that Doe denied showing pornography to another student during her testimony but said she had shown inappropriate videos to her friend during the CFIT. Counsel also pointed out that Doe denied looking at pornography on her own during her testimony but said she looked at the videos alone during the CFIT. She asked the jury to "specifically" look at the questions posed in the CFIT to see if they were suggestive "and how that can be impressionable on a ten-year-old girl."

### B. Evidence Code Section 1360

Evidence Code section 1360 provides an exception to the hearsay rule for certain statements made by a child abuse victim under the age of 12 years.[3] (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367 (*Roberto V.*).) The statute "allows the court to admit a child's hearsay statement describing an act of child abuse upon that child provided three conditions are met: (1) the court finds that the time, content and circumstances of the statement provides sufficient indicia of reliability; (2) the child either testifies at the hearing or there is corroborating evidence of the hearsay statements; and (3) the proponent of the statement gives notice to the adverse party that it intends to

---

[3]    Evidence Code section 1360, subdivision (a) provides:

"(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:

"(1) The statement is not otherwise admissible by statute or court rule.

"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.

"(3) The child either:

"(A) Testifies at the proceedings.

"(B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child."

13.

use the statement at trial." (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329; accord *In re Cindy L.* (1997) 17 Cal.4th 15, 29.)

Defendant challenges only if Doe's CFIT had sufficient indicia of reliability. Our Supreme Court has identified the following nonexhaustive list of factors to determine the reliability of a child abuse victim's hearsay statement: (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; (4) lack of motive to fabricate; and (5) the child's ability to understand the duty to tell the truth and to distinguish between truth and falsity. (*In re Cindy L., supra*, 17 Cal.4th at pp. 29–30, citing *Idaho v. Wright* (1990) 497 U.S. 805, 821–822, abrogated in part by *Crawford v. Washington* (2004) 541 U.S. 36, 60–62.)

A trial court's admission of evidence under Evidence Code section 1360 is reviewed for abuse of discretion. (*Roberto V., supra*, 93 Cal.App.4th at p. 1367.) Defendant urges this court to apply independent review based on *People v. Eccleston* (2001) 89 Cal.App.4th 436, 445 (*Eccleston*) and *People v. Tatum* (2003) 108 Cal.App.4th 288, 296. However, in *Eccleston* and *Tatum*, the confrontation clause was implicated because the hearsay declarant did not testify. (*Eccleston*, at pp. 441–442; *Tatum*, at p. 295.) *Eccleston* and *Tatum* also relied on *Lilly v. Virginia* (1999) 527 U.S. 116, 136, which in turn relied on *Ohio v. Roberts* (1980) 448 U.S. 56. *Ohio v. Roberts* was abrogated by *Crawford v. Washington, supra*, 541 U.S. at pages 60–62, thereby "rendering *Lilly* a dead letter" (*U.S. v. Smalls* (10th Cir. 2010) 605 F.3d 765, 773). Here, Doe testified at trial and was subject to cross-examination. "Where the witness is available at trial for cross-examination, the principal danger of admitting hearsay evidence is not present [citation], and neither the federal nor the state constitutional right of confrontation is violated." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1118; accord, *People v. Clark* (2016) 63 Cal.4th 522, 601.) Under these circumstances, the admission of a hearsay statement under Evidence Code section 1360 would appear to be reviewable

for abuse of discretion as the standard generally applicable to a ruling on the admissibility of evidence. (*In re Cindy L., supra*, 17 Cal.4th at p. 35 [applying abuse of discretion to admission of child hearsay in dependency proceeding]; *People v. Waidla* (2000) 22 Cal.4th 690, 725 ["an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question"].) We need not determine the applicable standard of review because our conclusion in this case would be the same under either standard.

### C. Ineffective Assistance of Counsel

Defendant did not object to admission of the CFIT. Indeed, his attorney expressly acknowledged to the trial court that the CFIT appeared to have sufficient indicia of reliability. Recognizing his failure to object forfeits the issue on appeal,[4] defendant frames his challenge as an ineffective assistance of counsel claim. Defendant argues because the CFIT was inadmissible, there was no legitimate reason for defense counsel not to challenge its admission, and, had counsel objected, the result of the proceeding would have been different.

An ineffective assistance of counsel claim has two required prongs. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Kelly* (1992) 1 Cal.4th 495, 520; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 688.) Second, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*Kelly*, at p. 520; accord, *Strickland*, at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.) If the defendant fails to satisfy either prong, his ineffective assistance of counsel claim must fail. (See *id.* at p. 697.)

---

[4]     (See Evid. Code, § 353; *People v. Bolin* (1998) 18 Cal.4th 297, 320.)

15.

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion or objection must demonstrate not only the absence of a tactical reason for the omission [citation], but also that the motion or objection would have been meritorious if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted." (*People v. Mattson* (1990) 50 Cal.3d 826, 876, superseded by statute on another ground as stated in *People v. Bolin, supra*, 18 Cal.4th at p. 315, fn. 2.)

*D. Analysis*

Defendant argues Doe's allegations were not consistently repeated and she contradicted herself on several material facts. He notes her testimony went back and forth about whether she remembered looking at videos on defendant's phone and the reasons for her conversation with the school principal. He points out Doe initially testified nothing occurred at the Avenue 11 house, but later testified defendant touched her vagina in that house. Defendant argues her testimony about an incident at the Avenue 9 house was contradictory, given she said she did not feel anything inside her and denied there was penetration of her vagina or anus despite her earlier demonstration with the tissue box. He further argues Doe was inconsistent about whether her underwear remained on during this incident. Defendant notes Doe said in the CFIT she would be unable to do physical education because of the assaults, but she testified at trial she was able to participate in physical education afterwards. He claims Doe contradicted herself

16.

by repeatedly claiming not to remember anything only to later recite facts showing she did remember.

Except for Doe's statements about participating in physical education, defendant only cites purported inconsistencies within Doe's trial testimony and does not identify inconsistencies in her statements during the CFIT or between the CFIT and her testimony. Defendant acknowledges in his reply brief that "Doe's inconsistencies were not between her recorded interview and her trial testimony but within her trial testimony itself." We are not persuaded the identified inconsistencies within Doe's testimony rendered her statements during the CFIT unreliable. The trustworthiness of Doe's out-of-court statements "is determined by examining 'the totality of circumstances that *surround the making of the statement*.' " (*Roberto V., supra*, 93 Cal.App.4th at p. 1374, italics added.) Though Doe was sometimes unclear about the details, her description of the abuse in her testimony was generally consistent with her statements during the CFIT. (See *Eccleston, supra*, 89 Cal.App.4th at p. 446 [child's hearsay statements were reliable where the details varied but the general outline of abuse remained constant].) In both her testimony and the CFIT, Doe reported that defendant put his "private part" in her female private parts. Counsel repeatedly asked Doe during her testimony if she could not remember details because the allegations did not happen. At no point did Doe agree the abuse did not occur. The record reflects Doe's back and forth during trial about what she remembered was in part related to her significant discomfort in discussing the abuse, which is consistent with her reported discomfort during the CFIT. Doe's reluctance to answer questions about defendant's abuse may suggest "whatever happened is too traumatic for the child to discuss." (*People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 967.) It does not render the CFIT unreliable.

Other factors of reliability support the CFIT's admissibility. Doe's report of the abuse during the CFIT was spontaneous because she volunteered to Avalos that defendant

"rapes" her. This description was consistent with Doe's initial disclosure to her school principal. Though defendant concedes there is no evidence Doe's mental state is impaired, he claims her inability during trial to understand "the most basic, unambiguous questions posed by the attorneys" undermined the reliability of her out-of-court statements. Defendant again focuses on purported issues during Doe's testimony, not with her statements in the CFIT. Nothing in the record reflects adversely on Doe's mental state at the time of her reports to Avalos. As defendant acknowledges, there is no evidence Doe's mental state is impaired.

Defendant claims Doe was motivated to fabricate the allegations to deflect her own culpability when she believed she was in trouble with the principal and because she was angry at defendant for arguing with her mother. The notion Doe would fabricate defendant's rape to avoid trouble at school strains plausibility. Given defendant no longer lived with Doe and the tenuous nature of defendant and Celia's relationship at the time of Doe's initial report of the abuse, we also find implausible that her anger in the past about defendant's arguments with her mother prompted Doe to lie. Defendant presents no evidence Doe's statements were fabricated or unreliable.

Doe did not use terminology unexpected of a child of similar age during the CFIT. This factor neither supports nor detracts from the reliability of her out-of-court statements.

The record reflects defense counsel believed the CFIT had sufficient indicia of reliability, and we conclude that belief was supported by the record. Counsel presumably did not move to exclude the CFIT as inadmissible because she surmised such a motion would not be meritorious. An attorney's failure to move to exclude admissible evidence does not constitute ineffective assistance of counsel. (*People v. Berry* (1990) 224 Cal.App.3d 162, 170 [motion to exclude admissible evidence would have been futile and counsel's performance was thus not deficient for failing to make that motion].)

Furthermore, counsel's closing argument reflects she may have had tactical reasons for not objecting to admission of the CFIT because she used Doe's statements in the CFIT to try to undermine Doe's credibility to the jury. Specifically, counsel cited the CFIT to highlight inconsistencies in Doe's reporting, argue Doe was motivated to lie, and insinuate Doe's allegations may have resulted from suggestive questioning by Avalos. Because the CFIT was sufficiently reliable to be admissible and defense counsel may have had a strategic reason for not objecting to its admission, counsel's performance was not deficient.

Even if we were to conclude the CFIT was inadmissible, defendant has failed to show prejudice from its admission. Admission of the CFIT did not "deprive the defendant of a fair trial." (*Strickland v. Washington, supra*, 466 U.S. at p. 687.) Doe testified at trial, and defense counsel was able to cross-examine her about any perceived inconsistencies in Doe's statements. The "reliability of testimonial hearsay is best established by 'the crucible of cross-examination.' " (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19.) No reasonable probability exists that the jury would have reached a different outcome if the CFIT had been excluded. We therefore reject defendant's ineffective assistance of counsel claim.

## II.    Violation of Section 288.5, Subdivision (c)

Defendant argues, and the People agree, section 288.5, subdivision (c) prohibits his conviction for continuous sexual abuse under section 288.5 together with his four section 288.7 convictions against a single victim during an overlapping period.

### A.  Additional Background

The amended information filed on January 11, 2024, alleged a date range on the continuous sexual abuse offense (count 5) between January 4, 2020, and August 30, 2020. The trial court noted to the prosecutor during trial that the date range on this count differed from the other four counts. The prosecutor advised the court this was a typo and

orally moved to amend the end date to August 30, 2023.  Defense counsel objected to the prosecutor's oral motion to amend the date range on count 5 to coincide with the other counts but gave no reason for the objection.[5]  The court granted the prosecutor's motion over defendant's objection.

On counts 1 to 4 for sexual intercourse or sodomy with a child (§ 288.7, subd. (a)), the jury was instructed using CALCRIM No. 1127.  The jury was given an unanimity instruction (CALCRIM No. 3501) on counts 1 to 4.  On count 5 for continuous sexual abuse (§ 288.5, subd. (a)), the jury was instructed using CALCRIM No. 1120.  Pursuant to CALCRIM No. 1120, the jury was instructed defendant cannot be convicted unless they agree he committed three or more acts over a period of at least three months, but the jury did not have to agree on which three acts were committed.

During deliberations, the jury requested a transcript for part of Doe's testimony.  The trial court wrote a message to the jury that they could not have a transcript, but the court reporter would read back Doe's testimony, and asking the jury to specify the exact testimony requested.  The court characterized the jury's subsequent request as "even less specific" and responded by asking the jury for the exact subject matter of the requested testimony.  The jury asked for Doe's testimony "regarding pain in her bottom," "touch on her back," and "pain on her arm" (capitalization omitted).  The court reporter read back this part of the testimony to the jury.

The jury subsequently requested a copy of exhibit C.  Exhibit C was Doe's handwritten response to defense counsel's question about what caused pain to her "female body parts."  Doe's response stated:  "Him putting his male part in my female

---

[5]     The People do not argue defendant forfeited the issue on appeal despite his counsel's failure to object that charging the discrete sex offenses and continuous sexual abuse during an overlapping period was not permissible under section 288.5, subdivision (c).  Indeed, the People expressly agree with defendant that the multiple convictions cannot stand.  We therefore address the claim on the merits and do not address defendant's argument the issue was not forfeited or alternative argument of ineffective assistance of counsel on this ground.

body parts." This written response was marked for identification but not admitted as evidence. The trial court advised the jury this exhibit could not be given to them since it was not admitted into evidence but noted the exhibit's content had been read to them in the recent readback.

B. *Applicable Law and Analysis*

Section 288.5 defines the crime of continuous sexual abuse of a child. The statute "created 'a course-of-conduct crime' not requiring a child relate a specific date, time, or particular 'set of circumstances.' [Citation.] This made it easier for prosecutors to prove sexual assault against children under 14 where an abuser had recurring access to the victim." (*People v. Martinez* (2024) 105 Cal.App.5th 178, 186 (*Martinez*).) "The statute, however, imposes certain limits on the prosecution's power to charge both continuous sexual abuse and specific sexual offenses in the same proceeding." (*People v. Johnson* (2002) 28 Cal.4th 240, 243 (*Johnson*).) Specifically, section 288.5, subdivision (c) provides: "No other act of substantial sexual conduct … involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative." This statutory subdivision "mandates the charging of continuous sexual abuse and specific sexual offenses, pertaining to the same victim over the same period of time, only in the alternative." (*Johnson*, at p. 248.) Accordingly, a defendant "cannot stand convicted of both a violation of section 288.5, and of multiple counts of other specific felony sex offenses committed against the same victim and in the same time period as the section 288.5 count." (*People v. Torres* (2002) 102 Cal.App.4th 1053, 1055.)

All five counts had an overlapping date range on both the amended information and as later orally amended by the prosecution. Defendant was thus charged with four discrete sex offenses and continuous sexual abuse of a single victim during the same time

period.  These charges were not pled in the alternative, and the jury was not instructed on charges in the alternative.  The jury found defendant guilty on all five counts, and the trial court sentenced defendant on all counts.  The parties agree, as do we, defendant's convictions for the discrete sex offenses and continuous sexual abuse during the same period violate section 288.5, subdivision (c).

Where the parties disagree is the proper remedy.  While defendant contends the remedy is to remand the matter to the trial court to determine which count(s) to vacate, the People argue the continuous sexual abuse conviction should be reversed and the four convictions on the discrete sex offenses affirmed.  The People have the better argument.

Our Supreme Court in *Johnson* held that if a defendant has impermissible multiple convictions in violation of section 288.5, subdivision (c), "either the continuous abuse conviction or the convictions on the specific offenses must be vacated."  (*Johnson, supra*, 28 Cal.4th at p. 245.)  *Johnson* thus "requires nothing more than vacation of *either* the continuous sexual abuse conviction *or* the convictions on the specific sexual offenses." (*People v. Torres, supra*, 102 Cal.App.4th at p. 1057.)  Given that section 288.5 was adopted to prevent child molesters from evading conviction, "courts have held that where a conviction must be vacated for violating section 288.5, subdivision (c), the defendant shall be left 'standing convicted of the alternative offenses that are most commensurate with [his] culpability.'  [Citations.]  Generally, this means 'upholding whichever conviction[s] resulted in the greater aggregate penalty and vacating the less serious count[s].' "  (*People v. Patton* (2024) 101 Cal.App.5th 922, 931, second bracketed insertion added (*Patton*).)

Defendant acknowledges the remedy for multiple convictions in violation of section 288.5, subdivision (c) is generally to uphold the conviction(s) with the greatest aggregate penalty but notes the *Martinez* court recently took a different approach.  In *Martinez*, the defendant was convicted of four discrete sex offenses and continuous

22.

sexual abuse of a child in violation of section 288.5, subdivision (c). (*Martinez, supra*, 105 Cal.App.5th at pp. 183–184.) In considering the appropriate remedy, the Court of Appeal observed that other cases "assert the most appropriate sentence will always be the one which imposes the longest prison term." (*Id.* at p. 187.) But the *Martinez* court departed from those cases "because of the nuances" in the defendant's case. (*Id.* at p. 188.) Specifically, the "jurors asked six questions during deliberations seeking clarification of different issues …. They also asked for readback of witnesses. The relevance, implications, and meaning of these inquiries lead us to believe the trial judge who also heard the evidence, watched the witnesses testify, and observed the witnesses' demeanor, is in the best position to determine which offense or offenses would 'leave appellant standing convicted of the alternative offenses that are most commensurate with his culpability.' " (*Ibid.*) Accordingly, the court remanded the matter for the trial court to hold a hearing to decide which count(s) best described the defendant's behavior, vacate the alternate charges, and conduct a complete resentencing. (*Ibid.*)

Defendant contends this case is like *Martinez* because the jury also posed "several" requests for readback and exhibits. This inaccurately describes what occurred during deliberations. The jury requested readback of one part of Doe's testimony and one exhibit that was not provided because it had not been admitted into evidence. The back and forth between the jury and the trial court was directed at clarifying which part of Doe's testimony they wished to hear. Unlike in *Martinez*, the jury did not seek clarification on several different issues or readback of witness testimony other than Doe's testimony. The circumstances here differ from those in *Martinez* and do not mandate a remand for the trial court to determine which counts to vacate.

The trial court imposed and stayed a 12-year term for the continuous sexual abuse conviction (count 5) and sentenced defendant to four consecutive terms of 25 years to life for the four discrete sex offenses (counts 1 to 4). The latter aggregate term is the longest

and most commensurate with defendant's culpability.  (See *Patton, supra*, 101 Cal.App.5th at p. 931 [court vacated § 288.5 conviction where the aggregate term for the discrete sex offense provided the greatest punishment].)  We will therefore vacate the conviction on count 5.

"When a count is vacated, the typical remedy is to remand for resentencing so that the trial court may restructure its sentencing choices to compensate for the lost count. [Citation.]  However, where 'the trial court imposed the maximum possible sentence' and 'there are no sentencing choices to restructure, it is appropriate for us to modify the sentence on appeal.' "  (*Patton, supra*, 101 Cal.App.5th at p. 931.)  Here, the trial court imposed the maximum possible sentence.  The offense in counts 1 to 4 permits only one sentence of 25 years to life (§ 288.7, subd. (a)).  The two aggravating circumstances alleged in the amended information were later dismissed at the prosecutor's request.  The court imposed the middle term of 12 years on count 5, the maximum the court could impose without any proven aggravating circumstances.  (§ 1170, subd. (b)(2); Cal. Rules of Court, rule 4.420(b) [courts may only choose an upper term where the aggravating circumstances have been stipulated to or proven beyond a reasonable doubt to a jury or trial court].)  Because there are no sentencing choices to restructure, we will vacate the conviction on count 5 and affirm the convictions on counts 1 to 4.

## III.  Fine Imposed Under Section 294, Subdivision (a)

Defendant contends if this court vacates the conviction on count 5 instead of remanding for resentencing, the $820 fine imposed pursuant to section 294, subdivision (a) must also be vacated.  The People agree this fine must be vacated if the conviction on count 5 is vacated.

The trial court ordered defendant to pay a fine of $820 pursuant to section 294, subdivision (a).  Section 294, subdivision (a) permits the trial court to impose a restitution fine on a defendant convicted of violating section 273a, 273d, 288.5, 311.2, 311.3, or

24.

647.6.  A fine under this statutory subdivision was only permissible on defendant's section 288.5 conviction because his other four convictions were for violating section 288.7, which is not one of the enumerated offenses in section 294.  Because we are vacating the conviction on count 5, we agree with the parties that the fine imposed under section 294 must also be vacated.

## DISPOSITION

The judgment is modified to vacate defendant's conviction for violating section 288.5, subdivision (a) on count 5.  The fine imposed under section 294, subdivision (a) is vacated.  The trial court is directed to prepare an amended abstract of judgment reflecting these modifications and forward a certified copy of the amended abstract of judgment to all relevant authorities.  In all other respects, and as modified, the judgment is affirmed.


                                                                                    HILL, P. J.
WE CONCUR:


MEEHAN, J.


FAIN, J.†

---

†      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.